J. Mark STANLEY, as Trustee of Florida Carolina Lumber Company, Bankrupt, Appellant,

v.

Charles ALCOCK, P. J. Davis, Clarence Hood, Jr., Individually and as Officers and Directors of Florida Carolina Lumber Company and Southern Creosoted Lumber Co., Inc., et al., Appellees.

No. 18793.

United States Court of Appeals
Fifth Circuit.

Nov. 14, 1962.

H. I. Fischbach, Miami, Fla., for appellant.

William B. Roman, Miami, Fla., for Morales, Pan American Bank of Miami and So. Creosoted Lumber Co.

Seymour B. Liebman, Miami Beach, Fla., for Leibman and Bank of Miami Beach.

Aaron M. Kanner, Miami, Fla., for P. J. Davis.

Milton A. Grusmark and Sibley, Grusmark, Barkdull & King, Miami Beach, Fla., for Alcock and Hood.

Harold Friedman and Feibelman, Friedman, Hyman & Durant, Miami, Fla., for Leo Robinson, Dania Bank and Southern Creosoted Lumber Co.

James Lawrence King, Fred R. Baisden, John Gale, Miami Beach, Fla., for other appellees.

Before CAMERON, JONES and GEWIN, Circuit Judges.

CAMERON, Circuit Judge.

This is an appeal by Stanley, Trustee in Bankruptcy for Florida Carolina Lumber Company, from a summary judgment in favor of defendants-appellees Alcock et al. based upon the trial court's finding that there was no genuine issue as to any material fact; said judgment also striking appellant's pleadings and dismissing his action for failure to prosecute.

The facts of the case and the substantive legal issues involved are stated in our prior opinion reported at Coleman v. Alcock, 272 F.2d 618. The only issue on appeal here now is whether the lower court should have granted the summary judgment or the judgment dismissing the action for failure to prosecute.

■ All litigants recognize that the disposition of this case on the summary judgment issue turns on whether or not the record presents an issue of fact on the question whether Southern Creosoted Lumber Co., Inc. was the owned subsidiary of the bankrupt Florida Carolina Lumber Company. If there was such an issue, the summary judgment was not, of course, proper, it being elementary that a court cannot try issues of fact on a motion for summary judgment; it can only determine whether or not there are issues to be tried.[1]

■ It is clear to us that the evidence did present an issue as to this crucial fact, and that a brief consideration of the pleadings, depositions, admissions and affidavits will demonstrate that this is true.[2]

Appellant's affidavit consists of a resumé of what was shown by the evidence on the summary judgment issue which was before the court below and is before us. One important item included in the record is a written stipulation signed *inter alia* by appellees Alcock, Hood and Davis and filed as the basis of a consent decree entered by a Florida state court to which these three were parties. The stipulation reads in part:

"It is understood that the FLOR-IDA-CAROLINA LUMBER COMPANY is the parent corporation and the SOUTHERN CREOSOTED LUMBER COMPANY, INC. is a wholly owned subsidiary thereof * * *."

Later on the same day that this stipulation was filed, these three and another executed a written agreement reciting that they were "all of the stockholders and directors and officers in both Florida-Carolina Lumber Company and Southern Creosoted Lumber Company," which essayed to repudiate the quoted recitals in the stipulation, using these words:

"That contrary to the recitation contained in said paragraph 4 [of the stipulation], the true facts with respect to the aforesaid two corporations are such that there is no contractual, financial or other relationship existing directly between the two said corporations other than certain parties individually own stock separately in each of said corporations, and that therefore Southern Creosoted Lumber Co., Inc. is not a wholly owned subsidiary of Florida-Carolina Lumber Company * * *."

Here, three of the parties to this action on the same day executed solemn writings which contradict each other on a very vital matter. One in search of the truth would have to delve deep to ascertain which of the statements was true. In such a situation, created entirely by parties to this suit whose credibility is inextricably bound up in its decison, the trier of the facts ought to be permitted to look the witnesses in the face as they testify in an effort to ascertain where the truth does lie. Certainly this is not a function to be performed by a judge upon summary judgment.

The record further reveals that defendants Alcock, Hood and Davis claim that they own all of the common stock of Southern Creosoted individually, and that Florida Carolina never owned Southern Creosoted either legally or equitably, notwithstanding only $500.00 was paid for all of the common stock of a going corporation with an estimated net worth of $93,000.00, and that this sum was paid by checks drawn on Florida Carolina, the bankrupt. It is further shown in the record that, during negotiations prior to the purchase of the assets making up the

1. 3 Barron & Holtzoff Federal Practice and Procedure, § 1231, p. 101.

2. Cf. Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492, and cases therein cited.

bulk of Southern Creosoted's assets, the bankrupt contracted to buy the assets in its own or its nominee's name and advanced the earnest money; that Florida Carolina through its officers arranged the incorporation of Southern Creosoted, as its nominee, to hold the assets; that the transaction was financed with money borrowed from defendant P. J. Davis, a signer of the instruments quoted above, including a showing that Davis was to receive preferred stock of the now bankrupt corporation specifically retirable from the earnings of both Florida Carolina and Southern Creosoted. This and other evidence concerning transactions involving both corporations and the dealings of the individual defendants with them, argue strongly for a hearing on the merits and demonstrate the impropriety of attempting to dispose of this case by summary judgment.[3]

An examination of the disclosures made in this case and a consideration of the opposing inferences which may be drawn therefrom indicates a genuine issue of fact to be tried. We hold that the court below erred in deciding that there was no "genuine issue as to material facts;" to the contrary, we find a clear issue as to the equitable ownership of Southern Creosoted, supported by competent evidence tending to prove the allegations made by plaintiff. We repeat here what we said in the recent case of Alabama Great Southern Railroad Co. v. Louisville & Nashville Railroad Co., 1955, 5 Cir., 224 F.2d 1, 5, 50 A.L.R.2d 1302:

"In many recent cases, where motive, intent, subjective feelings and reactions, consciousness and conscience were to be searched, and examination and cross-examination were necessary instruments in obtaining the truth, we have pointed out that and why the issues may not be disposed of on summary judgment."

We hold, therefore, that the court erred in granting summary judgment and reverse for a trial on the merits.

The court below recited in the judgment appealed from, called "Summary Final Decree", that the cause came on to be heard "upon the motion of various defendants for the entry of a summary judgment and upon the motion of various defendants to strike the pleadings of the plaintiff and enter a summary judgment." After granting the summary judgment on the ground that the court was able to discover no issue of fact revealed by the evidence on the merits of the controversy,[4] the lower court went on to recite: "and the motion to strike the pleadings of the plaintiff and enter a summary judgment be and the same are hereby granted and that this cause be and the same is hereby dismissed, at the cost of the plaintiff."

Presumably, the last quoted words are intended to dismiss the action for want

---

3. The argument of appellees that the stipulation quoted above was entered in another proceeding and therefore was not competent evidence here is, in our opinion, without merit. There is no contention that any estoppel is involved, but only that these complicated facts, unexplained, called for a full disclosure before a fact finder and not for the entry of a summary judgment. Cf. Rule 56 (f), F.R.C.P. In any event, the objection goes rather to the weight than to the admissibility of the evidence.

It is true that in the depositions the parties to the two conflicting instruments essayed to explain their reasons for declaring in one the truth to be opposite to that set forth in the other. But there was conflict in the explanations of the several parties and certainly all of their attempted explanation presented a situation where, in seeking to discover the truth, different people could reach different conclusions.

4. The final judgment first recited:

"This Court has examined the depositions on file in this cause, the affidavits submitted and the pleadings, and it is apparent to the Court that there is no genuine issue as to the material facts. The Southern Creosoted Lumber Company was not a wholly owned subsidiary of Florida Carolina Lumber Company at any time and therefore plaintiff cannot recover in this action and that defendants are entitled to a judgment as a matter of law."

of prosecution or, more properly, for "failure of the plaintiff to comply with this Order of the Court," referring to an order that the parties meet and exchange lists of exhibits intended to be offered no later than June 21, 1960. The judgment recites that, on July 7, 1960, when the motion to strike the pleadings was set for hearing, the attorney for the plaintiff failed to appear; but it also recites immediately thereafter "the attorneys for the defendants brought to the attention of the Court at that time that the plaintiff, D. C. Coleman, Sr. had died one day previously and that a new Trustee must be substituted as party plaintiff."

If, as recited in the judgment, the Trustee had died before the day set for the hearing of the motion to strike the pleadings, we cannot see that the plaintiff's attorney was in default in failing to show up in court when his client was dead and the motion was not triable. The judgment does not show when the successor Trustee, plaintiff Stanley, was appointed by the Bankruptcy Court, but it does recite that the plaintiff did not have Stanley substituted for Coleman and that the defendants did so, and that the substitution was made by an order entered the day before the argument and disposition of the case by the judgment before us.[5]

It is clear that a new Trustee would have a reasonable time after appointment and substitution to acquaint himself with the issues of the case and that it ought not to be dismissed without taking that situation into account. The final judgment entered by the court below on September 16, 1960 recites various acts which were done between February 29, 1960 and the date of such entry. Plaintiff's attorney was, during that entire period, beset by many difficulties in producing his proof, most of which had to be obtained from his adversaries. This fact, plus the change of trustees, furnished extenuating circumstances which lead us to the conclusion that the court below ought not to have exercised its discretion so as to dismiss the action for want of prosecution. Certainly the fight was going on the day the final judgment was entered and the plaintiff was participating actively in supporting his side of what then seemed to be the chief question before the court: i. e., whether the evidence before the court presented a genuine issue as to any material fact.

We think that the court below erred in entering the "Summary Final Decree" appealed from and it is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

5. Rule 25(a) (1), F.R.C.P. provides that such substitution may be made within two years after the death of one of the parties.