Ferdinand H. Sales, Plaintiff and Appellee, *v.* Samac Motor Corporation, Defendant and Appellee; Industrial Development Company of Puerto Rico, Intervener and Appellant.

No. R-64-232.      Decided June 17, 1965.

516

*Juan Enrique Géigel, Guillermo Silva, Hernán G. Pesquera,* and
*Miguel A. Giménez Muñoz* for appellant. *Rodríguez Ema &
Rodríguez Ramón, Rodolfo Sequeira,* and *Nicolás Jiménez* for
appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge
of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The Samac Motor Corporation, a corporation organized
under the laws of Puerto Rico, was composed in 1960 of
three stockholders named Ferdinand H. Sales, Bernard L.
Shank, and José Macías. Each one owned one-third of the
stock of that corporation. As lessee it occupied certain prem-
ises owned by the intervener, Industrial Development Com-
pany of Puerto Rico, an agency of the Government of Puerto
Rico. 23 L.P.R.A. § 274.

In August 1960 plaintiff Sales sold to Samac Motor Corp.
all his stock for $15,000. He received a down payment of
$1,000, the remainder to be paid him in monthly amounts.
The debt was evidenced by 10 promissory notes, and it was
agreed that nonpayment of one of them would cause the
automatic maturity of all. In addition to those $14,000, the
corporation admitted that it owed $3,756.76 to Ferdinand
Sales on account of a loan.

When promissory No. 1 became due in October 1960, the
same was not paid, and in December of that year Ferdinand
Sales sued Samac Motor Corporation for collection of money
in the Superior Court of Puerto Rico, San Juan Part, and
levied an attachment on the machinery and other personal

property of defendant corporation which were found in the building of the intervener and lessor, the Industrial Development Company.

On March 16, 1962, Samac Motor Corporation filed in the Bankruptcy Court in San Juan, Puerto Rico, an arrangement proceeding under Chapter XI of the Federal Bankruptcy Act, 11 U.S.C. § 701 *et seq.*, offering to pay its creditors 20 percent of their credits. The Industrial Development Company filed in that Court a proof of claim entitled to priority, pursuant to § 64(a)(5), 11 U.S.C. § 104,[1] of the Bankruptcy Act, for $1,466.88, which sum comprised the rent accrued during the three months preceding the filing of the proceeding in bankruptcy. The Development Company included in its claim in the bankruptcy proceeding only the amount of the last three months and not the totality of the debt (12 months, $5,867.52), since the said section of the Bankruptcy Act contains that three months' limitation, thereby according priority only to the three months' term of rent due.[2] Samac on its part admitted that it owed such rent and the fact that the same had priority under the Bankruptcy Act.[3]

On April 3, 1962, the Referee in Bankruptcy entered an order requiring Ferdinand Sales to show cause why the

---

[1] That provision applies to arrangement proceedings, *Securities & Exchange Commission* v. *U.S. Realty & Improvement Co.*, 310 U.S. 434 (1940); 8 Collier, Bankruptcy 445, § 4.12 (1964).

[2] Section 64(a)(5) of the Bankruptcy Act, 11 U.S.C. § 104(a)(5), reads in its pertinent part as follows:

"*Debts which have priority.* (a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be . . . (5) debts owing to any person, including the United States, who by the laws of the United States is entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law: Provided however, That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy."

[3] See "Schedule A-1, Statement of all creditors to whom priority is secured by the Act."

attachment levied against Samac's personal property should not be set aside. After Sales appeared, the Referee ruled that the attachment was valid, since it had been levied prior to the four months before the filing of the petition for arrangement. 11 U.S.C. § 107(a); 4 Collier, Bankruptcy 88, § 67.07 (1964); *Yumet & Cía.* v. *Delgado*, 243 Fed. 519 (1917). Subsequently, on May 3, 1962, the Referee entered an order dismissing the petition for arrangement of Samac Motor Corp. on the ground that the attachment levied by Sales against Samac covered almost the totality of Samac's assets. The said order terminated the proceeding in the Bankruptcy Court.[4]

On June 28, 1962, the Development Company filed a Petition and a Complaint in Intervention in Sales' action against Samac Motor Corporation in the Superior Court of Puerto Rico, San Juan Part. The Development Company alleged that pursuant to § 1822(7) of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5192(7), it was entitled to priority over Samac's property attached by Sales up to the amount of the

---

[4] The said order of the Referee reads verbatim:

"ORDER DISMISSING PROCEEDINGS. A hearing was held before the undersigned on May 15th, 1962, at 2:00 P.M. to consider adjudication or dismissal of proceedings for failure of debtor to appear at the first meeting of creditors. On said date counsel for the debtor informed the Court that his clients were not present, wherefore he requested the continuance of the hearing.

"Upon objection from counsel for the P.R. Industrial Development Company of Puerto Rico, and in view of our order of May 3rd as to the validity of creditor Ferdinand H. Sales' attachment lien, which covers almost the totality of debtor's assets, the proceedings in the instant case are hereby DISMISSED.

"Let copy of this order be notified by mail to counsel for the debtor, for the P.R. Industrial Development Company of Puerto Rico, and for creditor Ferdinand H. Sales.

"San Juan, Puerto Rico, this 15th day of May, 1962.

W. H. Beckerleg

---

W. H. Beckerleg
Referee in Bankruptcy"

credits for rent for the period of one year ($5,867.52).[5]

The United States Government, through the district attorney of the Federal District Court in Puerto Rico, also filed a petition in intervention claiming $1,635.98, plus interest, of federal internal-revenue taxes. Lastly, on August 28, 1964, the Superior Court rendered judgment (1) sustaining the complaint of Ferdinand Sales against Samac Motor Corporation for $17,756.76, plus interest, costs, and $1,000 in attorney's fees; (2) denying the petition for intervention of the Industrial Development Company of Puerto Rico; and (3) sustaining the complaint of the United States Government and ordering Samac to pay to that Government the sum of $1,824.45, plus interest, and declaring that that Government had a preferred lien for collection of that sum over the properties attached to defendant Samac Motor Corporation. The Industrial Development Company filed a motion for reconsideration which the trial court denied.

The Industrial Development Company, intervener-appellant herein, assigns on appeal the following two errors:

(1) "The Superior Court of Puerto Rico, San Juan Part, erred in concluding that the dismissal of the bankruptcy petition of Samac Motor Corporation by the Referee in Bankruptcy, Honorable William H. Beckerleg, is an adjudication on the merits of the rights of the parties, wherefore the attachment levied by plaintiff Ferdinand H. Sales on the property of defendant Samac Motor Corporation means that Ferdinand H. Sales is a secured creditor, having a credit superior to the

---

[5] Section 1822 (7) *supra* of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5192 (7), provides in its pertinent part:

"With regard to specified personal property of the debtor, the following are preferred:

". . . . . . . .

"7. Credits for rents and leases for one year with regard to the personal property of the lessee existing on the estate leased and on the fruits thereof."

credits entitled to priority over the property of defendant Samac Motor Corporation."

(2) "The Superior Court of Puerto Rico, San Juan Part, erred in denying the petition for intervention of the Industrial Development Company of Puerto Rico."

We shall discuss both errors jointly. As the first error assigned implies, the trial court held essentially that the order of the Referee in Bankruptcy dismissing the petition of Samac Motor Corp. is an adjudication on the merits of the rights of the parties. As we shall presently see, there is language in the law which apparently warrants such ruling. However, in examining the law in detail and in applying the same as we believe it ought to be applied, we conclude that the trial court committed error.

We make it clear at the outset that the application of the Bankruptcy Act to the case is not in issue, nor does any of the parties question the same. The question for decision before us is the effect of the Referee's order dismissing the debtor's petition for arrangement, regarding the right of the intervener-appellant.

We believe that in order to achieve the greatest clarity possible in the discussion of this matter, it is desirable to state the trial court's rationale for its conclusion. Such rationale may be summed up as follows: The Bankruptcy Act classifies credits into secured claims and general claims. The latter in turn are subdivided into priority claims and common claims. A secured claim is superior to any other. The attachment levied by Sales conferred upon him the status of a secured creditor. The federal legislation on the matter prevails over the local. The Federal Rules of Civil Procedure apply to proceedings in bankruptcy, and according to the provisions of Rule 41 (b) the dismissal of the petition for arrangement filed by Samac Motor Corporation constitutes res judicata. Hence, the rights of the parties here involved

may not be litigated in the state courts. So far the summary of the trial court's thinking.

In footnote 4 of this opinion we have copied the Referee's order dismissing the petition for arrangement. As may be seen in that order, dated May 15, 1962, it is said that a hearing was held that day to consider the adjudication or dismissal of the proceedings, in view of petitioner's failure to appear at the first meeting of creditors. It is also said that in view of the fact that the Referee had considered valid the attachment levied by Ferdinand Sales, which covered almost the totality of petitioner's assets, the proceeding was dismissed. The foregoing is the essence of the Referee's order. We must decide whether or not such dismissal, in the light of the applicable law, constitutes an adjudication on the merits of the rights of the parties.

■ Rule 1 of the Federal Rules of Civil Procedure provides that the same govern all civil actions cognizable in the Federal District courts, with the exceptions stated in Rule 81. The latter in turn provides in subd. (a) (1) that these Rules do not apply to proceedings in bankruptcy, except insofar as otherwise provided by the Supreme Court of the United States. Section 30 of the Bankruptcy Act, 11 U.S.C. § 53, empowered that Court to prescribe the procedure in bankruptcy cases.[6] By General Order No. 37 the Federal Supreme Court provided that the Rules of Civil Procedure for the Federal District Courts shall be followed in proceedings in bankruptcy insofar as they are not inconsistent with the Bankruptcy Act or with the General Bankruptcy Orders. 11 U.S.C. (1964 ed.), App., p. 2014. We must therefore resort to those Federal Rules of Civil Procedure.

---

[6] Section 30 of the Bankruptcy Act was repealed on October 3, 1964, but the new Act preserved that power to the Supreme Court and does not vary at all the situation in the case at bar. Public Law 88–623, § 3; 78 Stat. 1001; 28 U.S.C. § 2075.

Rule 41 (b) covers the matter of involuntary dismissal. See text of that Rule in footnote 7. The trial court relied on Rule 41 (b), especially on its last sentence, to decide as already stated. From the foregoing it may be seen that we have no doubt that Rule 41 applies to proceedings in bankruptcy. See *Stanley* v. *Alcock*, ·310 F.2d 17 (1962) ; *Industrial Credit Co.* v. *Hazen*, 222 F.2d 225 (1955) ; *Kleid* v. *Ruthbell Coal Co.*, 131 F.2d 372 (1942) ; *In re Empire Sales Corp.*, 45 F.Supp. 974 (1942) ; *Kelso* v. *MacLaren*, 122 F.2d 867 (1941) ; *Perry* v. *Bowman et al.*, 122 F.2d 409 (1941) ; 1 Barron and Holtzoff, Federal Practice and Procedure 55, § 124 (1960). However, is the literal application of that Rule to the specific case under consideration correct? We think not because this case does not come within the rationale underlying said Rule 41 (b). Let us see.

■ In the first place, the main purpose of that Rule is to propitiate the dismissal of actions at the instance of defendants whenever plaintiffs fail to prosecute their causes, or when the latter are wayward and fail to comply with the rules or orders of the court. As correctly pointed out by

---

[7] *"Rule 41(b). Involuntary Dismissal: Effect Thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismisal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits." As amended on January 21, 1963, to be effective July 1, 1963.

Barron and Holtzoff,[8] Rule 41 (b) covers three situations: (1) dismissal for failure of plaintiff to prosecute; (2) dismissal for failure of plaintiff to comply with the Rules of Civil Procedure or with the orders of the court; and (3) dismissal whenever, after plaintiff has completed presentation of his evidence, the defendant moves for dismissal on the ground that upon the facts and the law plaintiff has shown no right to relief. None of those three situations is present in the case at bar. From the foregoing analysis it may be seen, as indicated by those authors, that Rule 41 (b) constitutes a remedy available to defendants. The remedy for plaintiffs or petitioners is provided for in Rule 41 (a) on voluntary dismissal.[9]

■ Rule 41 (b) penalizes the negligent or wayward plaintiff by preventing him from later bringing another action of the same nature against the same parties. That seems to be the chief reason for the res judicata clause of that Rule. That is why the 1963 amendment was so appropriate and just in providing that a dismissal for failure to join an indispensable party shall not operate as an adjudication on the merits. The justice of that amendment is clear; the contrary would be to decide an issue without giving a party its day in court. Obviously, the purpose of Rule 41 (b) is not to penalize the diligent creditors and much less those entitled to the priority secured by the Bankruptcy Act itself, 11 U.S.C. § 104 (a) (5), and who have been diligent as was the intervener.

■ The rationale of the Order of Dismissal of the Bankruptcy Court—which dismissed the debtor's petition because the attachment levied by Ferdinand Sales covered practically its total assets—did not prejudge at any time the right of

---

[8] Volume 2B of their "Federal Practice and Procedure" 134–35, § 916 (1961). See, also, 5 Moore, "Federal Practice," § 41.11(2) (2d ed.); 9 "Cyclopedia of Federal Procedure," §§ 29.13–29.16 (3d ed.).

[9] Barron and Holtzoff, *ibid.* at 135.

the Industrial Development Company, nor much less prejudge adversely the priority of such credit over that of Sales. As stated before, the Bankruptcy Act accords priority to the credit for rent whenever the latter has it by state law. This is precisely the case of intervener Devolopment Company. 11 U.S.C. § 104 (a) (5), 31 L.P.R.A. § 5192 (7).

It must be recalled that Rule 41 (b) is part of a set of rules—the Federal Rules of Civil Procedure—which were made for civil proceedings in general and not specifically for bankruptcy cases which may present situations sui generis such as that in the case at bar. That is why General Order No. 37 expressly provides that the Federal Rules of Civil Procedure shall apply to proceedings in bankruptcy insofar as they are not inconsistent with the Bankruptcy Act. The inconsistency which the General Order seeks to prevent includes both the inconsistency with the letter and the inconsistency with the spirit of the Bankruptcy Act. That is why we believe that the application of Rule 41 (b), as was done here by the trial court, in such a way as to defeat a credit entitled to priority, without even examining whether the latter would prevail over the attachment levied by Sales, is an incorrect application of Rule 41 (b).

It must be recalled that the Bankruptcy Act presupposes that the court shall protect the interests of the creditors, 11 U.S.C. § 776 (2) ; *Securities & Exchange Commission* v. *U.S. Realty & Improvement Co.*, 310 U.S. 434, 451 (1940) ; 8 Collier, *supra* at 444, § 4.12. Since in the arrangement proceedings the debtor seeks to reach an arrangement or agreement with his common creditors and not with the secured creditors (as is Sales), it may be seen why the Bankruptcy Court dismissed the proceeding, since it estimated that if Sales collected, no assets would be left for the common creditors. But that cannot defeat a creditor entitled to priority over Sales (as is the Industrial Development Company), nor much less serve to deny it its day in court.

■■ The trial court's error was due to a strictly literal application of Rule 41 (b). It is well known that the governing concepts of the Law at all times and in all civilizations have warned against the risks of the narrow, literal and mechanical application of the written norms without considering the reasons which produced the norm and the facts to which the norm is to be applied. Already early in the development of the American case law, precisely in a bankruptcy case, Mr. Chief Justice Marshall had occasion to point out that the statutes must be construed as a whole and not by isolated sections. *United States* v. *Fisher et al.*, 2 Cranch 358, 386 (1904), 2 L.Ed. 309, 313. As stated by Mr. Justice Learned Hand, there is no surer way to misread any document than to read it literally. *Guiseppi* v. *Walling*, 144 F.2d 608, 624 (1949). The Superior Court erred in following in its reasoning a logical formalism but of little syllogism, but a way of adjudicating already universally rejected. *Romero* v. *International Terminal Co.*, 358 U.S. 354, 377 (1959). Actually it is not necessary to elaborate on this. It is sufficient to recall the oft-cited teachings on the matter of Ihering, Cardozo, Holmes, Pound, Ehrlich, Geny, and of the contemporaneous Spanish, renowned jurists Castán, Puig-Brutau and Hernández Gil, among others.[10]

■■ The Supreme Court of the United States, author of Rule 41 (b) here under consideration, has neither applied it literally nor mechanically, but has construed it rationally and reasonably. We believe that our position is consistent with and parallel to that adopted by the Federal Supreme Court in connection with Rule 41 (b). Thus, in *Costello* v. *United States*, 365 U.S. 265, 286 *in fine* (1961), the Court said that in applying Rule 41 (b) to situations not provided for in that Rule (as in the case at bar), it seems reasonable to

---

[10] ". . . [F]or the letter killeth, but the spirit giveth life." 2 Corinthians 3, 4.

confine its operation to those situations where the policy behind the enumerated grounds is equally applicable. As stated before, we believe that the case at bar does not come within the situations nor within the policy behind Rule 41 (b). In applying that Rule, the courts have distinguished those cases in which its application comes within its rationale from those in which, because they do not come within the underlying policy, the dismissal does not constitute res judicata for the parties which have not had their day in court. *Cf. Bindley* v. *Metropolitan Life Ins. Co.,* 213 S.W.2d 387 (1948); *Otero* v. *Sandoval,* 292 P.2d 319 (1956); *Eager* v. *Belmore,* 207 P.2d 519 (1949); *Madden* v. *Perry,* 264 F.2d 169 (1959); *Hartford Acc. & Indem. Co.* v. *Levitt & Sons, Inc.,* 24 F.R.D. 230 (1959). Furthermore, a dismissal with prejudice should not be implied from ambiguous or doubtful expressions of the court. *Brooks* v. *Sinclair Refining Co.,* 139 F.2d 746 (1944). See 2B Barron and Holtzoff, *op. cit.* at 156–62, § 921; Annotation, *"Dismissal as Res Judicata,"* 54 A.L.R.2d 473, 478–79.

In the case at bar it would be unfair for intervener-appellant if its right to a credit as lessor, recognized in the federal ambit by the Bankruptcy Act itself (11 U.S.C. § 104(a)(5)) and in the state ambit by our Civil Code (31 L.P.R.A. § 5192(7)), were defeated without some court, whether the Bankruptcy Court or the Superior Court, passing on the merits thereof. A determination such as that made by the trial court, if sustained, could not be consistent with the "best interests of the creditors," nor be "fair and equitable." *Securities & Exchange Commission* v. *U.S. Realty Co., supra* at 451.

Regarding the relations between the Development Company and Ferdinand Sales, the effect of the order dismissing the petition was that the property involved became subject to the ordinary methods in the competent courts.

*Acme Harvester Co.* v. *Beekman Lumber Co.*, 222 U.S. 300, 310 (1911); *In re Glory Bottling Co. of New York*, 283 Fed. 110, 111–12 (1922). It ought to be clear that since the Industrial Development Company did not have an opportunity to litigate in the Bankruptcy Court its credit entitled to priority over that of Ferdinand Sales, and as a result of the dismissal *sua sponte* of the debtor's petition, the Development Company had and has the right to intervene in the action in the Superior Court and to assert its rights under § 1822 of the Civil Code, 31 L.P.R.A. § 5192(7).

Returning to the local law, appellee alleges that the Development Company has no right to claim against the personal property of its lessee, since as a result of the attachment levied by him such properties were "removed," and that Development did not claim them within 30 days after the removal. Appellee relies on the last paragraph of § 1822 *supra* of the Civil Code, which provides that "If the personal property, with regard to which the preference is allowed, has been surreptitiously removed, the creditor may claim it from the person who has the same, within the term of thirty days counted from the time it was so removed."

■ Appellee is not right. The term "removed" has different meanings, but the Code employs that term as meaning surreptitiously removed or taken out. The purpose of that provision is to prevent a rather frequent illegal practice whereby the debtors surreptitiously remove from the stores or premises the merchandise and other personal property whenever they learned or suspected that an attachment had been levied against them. See 3 García-Goyena, *"Concordancias, Motivos y Comentarios del Código Civil Español"* 286 (Madrid, 1852); Gullón-Ballesteros, *"El Crédito Privilegiado en el Código Civil,"* in 11 *Anuario de Derecho Civil* 435, 475 (Madrid, 1958).

Lastly, appellee contends that § 1822 *supra* of the Civil Code, 31 L.P.R.A. § 5192, which establishes the classification

of credits in connection with the debtor's personal property, violates the constitutional guarantee of equal protection of the laws. In the light of the decisions on the power of legislative assemblies to make reasonable classifications, this contention is frivolous, in our opinion, and we shall not discuss the same.

For the reasons stated herein, the judgment rendered in this case by the Superior Court, San Juan Part, on August 28, 1964, granting the petition for intervention of the Industrial Development Company of Puerto Rico, will be modified and, consequently, defendant Samac Motor Corporation is hereby ordered to pay to the intervener the sum of $5,867.52, plus interest and costs; it being hereby declared that the Industrial Development Company has a preferred lien over that of Ferdinand Sales for collection thereof over the properties attached to defendant, pursuant to the provisions of § 1822 (7) *supra* of the Civil Code.