James L. CHERRY and Mildred F. Cherry, Appellants,

v.

BROWN–FRAZIER–WHITNEY, Partnership.

No. 74–1410.

United States Court of Appeals, District of Columbia Circuit.

Submitted without Argument Oct. 22, 1975.

Decided Nov. 11, 1976.

James L. Cherry and Mildred F. Cherry, pro se, were on the brief for appellants.

Mark P. Friedlander, Jr., Washington, D. C., was on the brief for appellee.

Before BAZELON,* Chief Judge, and ROBINSON and ROBB, Circuit Judges.

PER CURIAM.

This appeal is from an order of the District Court dismissing appellants' action therein for failure to prosecute,[1] and from a later order denying appellants' motion to set the dismissal aside. Because dismissal with prejudice, as it was here,[2] is a drastic

---

* Chief Judge Bazelon did not participate in the decision of this case.

1. "For failure of the plaintiff to prosecute . . ., a defendant may move for dismissal of an action or of any claim against him. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . ., other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." Fed.R.Civ.P. 41(b).

2. See note 1 supra. See also D.D.C. R. 1–14.

sanction,[3] we have studied the record on appeal with meticulous care. Finding, however, no abuse of discretion in the circumstances of the case, we affirm.

## I

This action, filed by appellants on July 3, 1969, sought specific performance of a contract to purchase real estate in the District of Columbia or, in the alternative, damages.[4] Appellees filed an answer to the complaint and a counterclaim seeking damages.[5] Discovery was subsequently completed[6] and the case was pretried on December 1, 1971, and apparently was then ready for trial.[7] On January 7, 1972, the case was reassigned to a District Judge[8] and, we are told, was set for trial on the following May 8 but was thereafter continued indefinitely on appellants' motion.[9] From that point onward, the docket reflects no action whatever until shortly prior to the order of dismissal.

On September 27, 1973, the District Judge wrote to counsel for the opposing parties requesting each to advise, within ten days, as to the status of the case. Appellants, who had moved from nearby Maryland to Kentucky,[10] were telephonically contacted by their counsel on October 1, whereupon they stated that they were ready for trial. During the telephone conversation, counsel explained that he would send to appellants a letter formally requesting advice as to their trial readiness, and that he wanted confirmation of that fact in writing. Counsel's letter was sent on the same day[11] and, no response having been received, counsel renewed his request by another letter on October 15,[12] but still there was no response from appellants. Meanwhile appellees had replied by letter of October 2, stating their "view that this

---

3. See, e. g., Syracuse Broadcasting Corp. v. Newhouse, 271 F.2d 910, 914 (2d Cir. 1959); Flaksa v. Little River Marine Constr. Co., 389 F.2d 885, 887–888 (5th Cir.), cert. denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968).

4. Appellants, husband and wife, contracted on January 4, 1968, to purchase from appellees, five individuals doing business as a limited partnership, a parcel of real estate improved by an apartment building at the price of $450,000. Appellants paid $22,500 and by the terms of the contract were to discharge the balance of indebtedness secured by two existing deeds of trust and to give a third deed of trust to appellees. Appellants' complaint charges that appellees thereafter refused to consummate the sale, and they claim payment of an aggregate of $81,996, either to appellees or on account of the deed-of-trust obligations.

5. The answer attributes responsibility for non-performance of the contract to appellants. It further asserts that after execution of the contract appellants collected $101,327 in rents, failed to maintain the premises in proper repair and thereby necessitated the expenditure of more than $14,000 by appellees, and defaulted in the mortgage payments assumed. The counterclaim sought judgment against appellants in the sum of $59,596, representing the claimed losses minus credits to which appellants appeared to be entitled.

6. Discovery activity, by appellees, consisted in taking the deposition of the husband-appellant, filing interrogatories to appellants, and requesting production of documents from appellants. The docket reflects no discovery effort by appellants.

7. Aside from mutual exchange, on or before December 15, 1971, of lists of names and addresses of known witnesses required by the pretrial order, it seems that nothing further remained to be done prior to commencement of trial.

8. The reassignment was from the senior district judge pool. See D.D.C. R. 3–3.

9. Both sides admit that the husband-appellant became the defendant in a criminal prosecution in Maryland and obtained the postponement of trial for that reason.

10. Appellees have charged, and counsel for appellants has intimated, that for a time it was not known where appellants were.

11. In the letter counsel stated, "I would appreciate your advising if you are prepared for trial and if not, when you would be ready." R. 19.

12. This letter read:
   I would appreciate your replying to my letter of October 1, 1973, so that I may advise [the District Judge's] chambers if you are prepared for trial and if not when you would be ready.
   Please let me hear from you at your earliest opportunity.
   R. 19.

case should be dismissed without prejudice by the failure of [appellants] to diligently prosecute the case, particularly in view of the difficulties that now arise in the trial of the case because of the passage of time." [13] On October 31, the District Judge ordered the action dismissed for want of prosecution.[14]

Appellants then presented a timely motion to set the order of dismissal aside, declaring their preparedness for trial. The motion referred to counsel's letters and represented that appellants received the first but not the second, but thought that the first letter was simply a confirmation of the telephone conversation and did not require an answer. Appellees opposed the motion, charging that after the case was pretried appellants "essentially disappeared from sight and took no further steps to prosecute the case." [15] The response in opposition called attention to the fact that appellants had not "explain[ed] why they have failed to prosecute the case for almost two years"; [16] it also averred that "[m]any of the witnesses to the very complex transaction that took place in 1968 and 1969 are no longer available," [17] and that the delay had unfairly advantaged appellants and disadvantaged appellees.[18]

The District Judge convened a hearing on the motion and entertained argument by counsel for the parties. Counsel for appellants referred to his telephone call and the ensuing letters, and attributed the lack of an answer to a mixup in communications. The judge observed that counsel's explanation "just has to do with what happened since October of '73," [19] and that his "concern is what happened two years from December of '71." [20] Counsel's reply was that "we were awaiting word as to what the condition of your trial calendar was so that we could go forward." [21] Counsel for appellees reminded that in May, 1972 "at [appellants'] request the case was taken off the calendar" [22] and that appellants had "done nothing since that time, taken no further steps in the matter." [23] Counsel repeated his claim that appellees "would be greatly prejudiced" [24] by reason of uncertainty as to the availability of witnesses and documents.[25] The judge took the matter under advisement and later denied the motion to reinstate the action.[26]

13. This letter does not appear in the record on appeal, but is printed as part of the appendix to appellees' brief, and in no way is it contested by appellants.

14. The order provided "that this action be and hereby is dismissed for failure to prosecute." R. 18.

15. R. 20.

16. R. 20.

17. R. 20.

18. In this regard, the opposition stated:
   To permit [appellants] now to pursue this case for the specific performance of the contract made five years ago, would in effect be giving the [appellants] an option to watch the real estate market and decide whether to go forward with the contract or not and would work a gross injustice upon [appellees] who [have] already, by lack of diligence on the part of [appellants], endured a cloud on the title since the filing of the suit.
   R. 20.

19. Transcript of Hearing on Motion to Reinstate at 3, hereinafter cited "tr. 3."

20. Tr. 3.

21. Tr. 4.

22. Tr. 5.

23. Tr. 5.

24. Tr. 6.

25. Counsel for appellants disputed the contention that records had become inaccessible. The claim that witnesses were unavailable was not contested.

26. In relevant part this order provided:
   [I]t appearing to the Court that the failure of [appellants] to diligently prosecute this action has unfairly disadvantaged [appellees], now . . . it is . . . [o]rdered that [appellants'] motion be and hereby is denied. R. 21.

## II

In *Link v. Wabash Railroad Company,*[27] the Supreme Court dealt extensively with the power and discretion of federal courts to dismiss lawsuits for want of prosecution. There, in a personal injury case, a district judge set a date for a pretrial conference, and two hours before the appointed time counsel for the plaintiff telephoned from a point 160 miles away to inform the judge's secretary that because of other pressing business he could not be present but would be available on the next day and the day following. The conference nevertheless went forward and the judge, after reviewing the history of the litigation, announced that it would be dismissed *sua sponte* for failure of diligent prosecution. The prominent facts, aside from the absence of the plaintiff's attorney from the conference, were that six years had passed since the case was filed, three years since the plaintiff had prevailed on defendants' motion for judgment on the pleadings, and two fixed trial dates had been postponed.

The dismissal, the Supreme Court held, was within the district judge's authority,[28]

which he could appropriately exercise on his own motion.[29] On the facts of the case, the Court further held, the judge did not abuse his discretion in doing so. Although counsel's absence from the pretrial conference, in light of the history of the case, permitted an inference that the plaintiff had deliberately been dilatory in proceeding,[30] the Court made clear that its affirmance of the district judge's action was predicated on the full circumstances of the case.[31]

In the case at bar, the dismissal came after the District Judge received no reply to his status inquiry from appellants' counsel—because counsel never got the written confirmation on trial readiness which, quite understandably, he sought from his clients. The order of dismissal awaited three times over the ten-day period within which responses to the judge's request were to have been made.[32] After appellants moved to vacate the dismissal, the judge conducted a hearing, listened to counsels' arguments and took the motion under advisement before issuing his ruling. Certainly it cannot be said that the District Judge did not handle the matter judiciously.

---

**27.** 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

**28.** "The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of *nonsuit* and *non prosequitur* entered at common law . . . and dismissals for want of prosecution of bills in equity . . .." *Id.* at 629–630, 82 S.Ct. at 1388, 8 L.Ed.2d at 737–738 (footnote omitted).

**29.** It was argued that Fed.R.Civ.P. 41(b) permits dismissal for want of prosecution only on a defendant's motion, and that by negative implication the rule forbids dismissals by the court *sua sponte*. This argument was rejected:

Neither the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties

seeking relief. The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an "inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. . . . It would require a much clearer expression of purpose than Rule 41(b) provides for us to assume that it was intended to abrogate so well-acknowledged a proposition.

370 U.S. at 630–632, 82 S.Ct. at 1388–1389, 8 L.Ed.2d at 738–739. Also rejected was the further contention that failure to give notice of the possibility of dismissal and opportunity for a hearing made the dismissal void. *Id.* at 632, 82 S.Ct. at 1389–1390, 8 L.Ed.2d at 739.

**30.** *Id.* at 633, 82 S.Ct. at 1390, 8 L.Ed.2d at 739–740.

**31.** *Id.* at 634–635, 82 S.Ct. at 1391, 8 L.Ed.2d at 740.

**32.** The judge's letter to counsel, requesting information as to the status of the case, was dated September 27, 1973. The order of dismissal was not entered until October 31.

■ Mere lapse of time does not warrant dismissal when the plaintiff has been diligent throughout;[33] speed simply for the sake of speed is not the purpose to be served.[34] As *Link* makes plain, whether there has been a "failure to prosecute" is to be determined upon a consideration of all pertinent circumstances,[35] and it is evident from the District Judge's expressed concern at the hearing about overall delay that he followed that course.[36] The critical fact was that the case had lain dormant for nearly seventeen months after it became ripe for trial.[37] The failure to inform the judge, upon his inquiry, that appellants could proceed to trial thus was but the culmination of a history of inactivity which was not persuasively accounted for.[38]

We cannot view appellants' omission to confirm their trial readiness, and their attorney's consequent inability to suitably respond to the judge's status call, differently from counsel's failure in *Link* to appear at the pretrial conference, or from other types of delinquencies which have capped a period of protracted idleness.[39] By the same token, the District Judge was at liberty to view that omission in light of the inertia which had preceded it.[40] To be sure, an adequate explanation may avert a delay otherwise justifying dismissal;[41] even a misunderstanding may excuse.[42] But the judge was not required to accept appellants' statement that they misread their counsel's unambiguous call for written confirmation of their preparedness for trial.[43] Moreover, the essential question was whether upon the whole proceeding appellants had manifested reasonable diligence.[44] That a litigant is aroused from his slumber by the imminence of dismissal is hardly an excuse which a court is compelled to abide.[45]

■ Dismissal for want of prosecution summons the judge to a high degree of judicial discretion.[46] It is well settled that

33. See cases cited *infra* notes 35, 36 and accompanying text.

34. *Alamance Indus. v. Filene's,* 291 F.2d 142, 145–146 (1st Cir.), *cert. denied,* 368 U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961).

35. *Link v. Wabash Ry., supra* note 27, 370 U.S. at 634–635, 82 S.Ct. at 1390–1391, 8 L.Ed.2d at 740–741. See, in accord, *Neel v. Barbra,* 78 U.S.App.D.C. 13, 14, 136 F.2d 269, 270 (1943); *Sandee Mfg. Co. v. Rohm & Haas Co.,* 298 F.2d 41, 43 (7th Cir. 1962); *Grunewald v. Missouri Pac. R.R.,* 331 F.2d 983, 987 (8th Cir. 1964).

36. Tr. 3–4.

37. *Murrah v. Fire Ins. Exchange,* 480 F.2d 613 (5th Cir. 1973) (15 months); *Salmon v. City of Stuart,* 194 F.2d 1004 (5th Cir. 1952) (15 months); *United States v. Bernstein,* 166 F.2d 466 (5th Cir. 1948) (16 months); *Sellick v. Helson,* 459 F.2d 670 (9th Cir. 1972) (20 months); *Ballew v. Southern Pac. Co.,* 428 F.2d 787 (9th Cir. 1970) (16 months); *Fitzsimmons v. Gilpin,* 368 F.2d 561 (9th Cir. 1966) (15 months); *Shale v. Florida Times-Union,* 291 F.Supp. 407 (M.D.Fla.1968) (4 months).

38. Compare *Link v. Wabash R.R., supra* note 27, 370 U.S. at 628–629 n.2, 82 S.Ct. at 1387–1388 n.2, 8 L.Ed.2d at 737 n.2.

39. *Wisdom v. Texas Co.,* 27 F.Supp. 992 (N.D. Ala.1939) (failure to appear at pretrial hearing); *Dalrymple v. Pittsburgh Consol. Coal Co.,* 24 F.R.D. 260 (W.D.Pa.1959) (counsel's failure to comply with local pretrial rules, aborting pretrial conference).

40. See note 35 *supra* and accompanying text.

41. *Bush v. United States Postal Serv.,* 496 F.2d 42, 44–45 (4th Cir. 1974); *Stanley v. Alcock,* 310 F.2d 17, 20 (5th Cir. 1962).

42. *Peterson v. Moore,* 267 F.2d 496, (3d Cir. 1959); *Council of Federated Orgs. v. Mize,* 339 F.2d 898, 900 (5th Cir. 1964).

43. See note 11 *supra.* It will be recalled that appellants admittedly received this letter.

44. *Walker v. Spencer,* 123 F.2d 347, 350 (10th Cir.), *cert. denied,* 316 U.S. 692, 62 S.Ct. 1296, 86 L.Ed. 1763 (1942). See also *Ballew v. Southern Pac. Co., supra* note 37, 428 F.2d at 788–789.

45. *E. g., Alexander v. Pacific Maritime Ass'n,* 434 F.2d 281, 283–284 (9th Cir. 1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1254, 28 L.Ed.2d 545 (1971).

46. *Sheaffer v. Warehouse Employees Local 730,* 132 U.S.App.D.C. 401, 403, 408 F.2d 204, 206, *cert. denied,* 395 U.S. 934, 89 S.Ct. 1996, 23 L.Ed.2d 449 (1969); *Michelsen v. Moore-McCormack Lines, Inc.,* 429 F.2d 394, 395 (2d Cir. 1970); *Spering v. Texas Butadiene & Chem. Corp.,* 434 F.2d 677, 680 (3d Cir. 1970), *cert. denied,* 404 U.S. 854, 92 S.Ct. 97, 30

his action will be reversed only for abuse.[47] Here the District Judge faced up to the crucial question and concluded that appellants had been inexcusably dilatory. From aught that appears, appellees had no responsibility for the delay[48] and there was positive indication that the delay had operated prejudicially to them.[49] We find no abuse in this case.

The orders appealed from are accordingly

*Affirmed.*

L.Ed.2d 95 (1971); *Timmons v. United States,* 194 F.2d 357, 359 (4th Cir.), *cert. denied,* 344 U.S. 844, 73 S.Ct. 59, 97 L.Ed. 656 (1952).

**47.** *Sheaffer v. Warehouse Employees Local 730, supra* note 46, 132 U.S.App.D.C. at 403, 408 F.2d at 206; *Barger v. Baltimore & O. R.R.,* 75 U.S.App.D.C. 367, 368, 130 F.2d 401, 402 (1942); *Michelsen v. Moore-McCormack Lines, Inc., supra* note 46, 429 F.2d at 395; *Spering v. Texas Butadiene & Chem. Corp., supra* note 46, 434 F.2d at 680.

**48.** Thus we distinguish cases such as *Foxboro Co. v. Fischer & Porter Co.,* 29 F.R.D. 522 (E.D.Pa.1961).

**49.** See notes 25, 26 *supra* and accompanying text. We do not imply that prejudice to the defendant is a precondition to dismissal for want of prosecution. Compare *Link v. Wabash R.R.,* discussed in text *supra* at note 27. When, however, as here, there is prejudice, it must be weighed against the policy favoring decision of cases on their merits. See *Richman v. General Motors Corp.,* 437 F.2d 196, 199 (1st Cir. 1971); *Dyotherm Corp. v. Turbo Mach. Co.,* 392 F.2d 146, 149 (3d Cir. 1968); *Flaksa v. Little River Constr. Co., supra* note 3, 389 F.2d at 888.