**Walter D. AMES, et al., Plaintiffs,**

v.

**STANDARD OIL COMPANY (INDIANA), Defendant.**

Civ. A. No. 83–1183.

United States District Court, District of Columbia.

July 28, 1985.

Walter D. Ames, Washington, D.C., for plaintiffs.

Thomas D. Yannucci, Kathy E. Manning, Kirkland & Ellis, Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Plaintiffs in the present action have asserted several claims arising out of an alleged breach by defendant Standard Oil Company (Standard) of a stock purchase agreement dated May 25, 1979. In a summary judgment opinion dated July 25, 1984, summary judgment was granted for defendant on contract and tortious interference with contract claims; other claims, alleging RICO violations and fraud, were "stayed until such time as arbitration is completed." The Court's decision was based in large part on the failure of plaintiff to comply with an arbitration clause in the stock purchase agreement.

On August 27, 1984, plaintiffs appealed from the Court's interlocutory order of May 25th. On January 9, 1985, the Court of Appeals of this Circuit granted appellees' motion to dismiss on the grounds that the May 25th order was not a final order on an appealable interlocutory order under 28 U.S.C. § 1292(a)(1).[1]

Upon learning of the dismissal of plaintiffs' appeal, the Court sent out notice of a status call to be held on February 13, 1985. Counsel for plaintiffs, Walter Ames, who practices law in Washington, D.C., failed to attend that status call or to inform the Court of his inability to attend. Counsel for defendant, who flew in from Chicago to attend the status conference, was also not informed that plaintiff would be absent. Because of plaintiffs' absence, the status call had to be terminated.

In another attempt to ascertain if plaintiffs were interested in pursuing this litigation, the Court issued an order on April 4, 1985. That order requested that the parties "file a status report informing the Court of their progress in arbitration of the underlying contract claim. If the parties have not proceeded to arbitration, the Court requests that they set forth in detail their intentions with respect to continuing the litigation of this case."

On April 18th, the Court received defendant's status report, but plaintiffs did not respond to the Court's order.[2] Instead, on May 3, plaintiffs moved to amend their complaint, an action that was both meaningless in view of the self-imposed limbo in

---

1. Plaintiffs filed a petition for rehearing that was denied on February 20, 1985.

2. Plaintiffs later argue that failure to comply with these orders is excusable because plaintiff Ames—acting as counsel for himself and his wife—failed to receive the Court's orders. Plaintiffs "surmise" that this is so because plaintiff's law firm moved its offices approximately a year ago. Given the fact that plaintiff is a member of this bar, he must be aware that Local Rule 1–5(b) requires notice of change of address to be filed by praecipe within 10 days.

Otherwise, the address provided on the initial pleading "shall be conclusively taken as the last known address ... of said party or attorney." Because plaintiff did not file a change of address notice with this Court, the pleadings in question were mailed to his "last known address." Plaintiffs' failure to receive Court Orders is not "unavoidable" or "excusable" but a direct result of his failure to follow Local Rules. It is also additional evidence of plaintiffs' general disregard of this litigation.

which plaintiffs' conduct put the case and contrary to the Court's Order of July 26, 1984. According to that Order, the case was "stayed until such time as arbitration is completed and plaintiffs may then file, if appropriate, a third amended complaint." [3]

On May 17, Standard Oil moved to dismiss on grounds that plaintiff had repeatedly violated court orders and failed to prosecute the case. Standard's Memorandum in Support of Dismissal was joined with a motion in opposition to plaintiffs' move to amend. After receiving a ten-day extension of time, plaintiffs filed a reply to Standard's motion and opposition.

Based on the pleadings before it, the Court would have been justified in dismissing this suit at that time. Plaintiffs' opposition provided no valid justification for his failure to appear and to respond to Court orders. *See supra* fn. 2. More importantly, plaintiffs proffered no suggestion that arbitration was underway or was going to be initiated in the near future. Instead, plaintiffs offered the cryptic "admission" that "they [plaintiffs] obviously prefer litigation to arbitration. If they have to go to arbitration they will." Plaintiffs' Opposition to Motion to Dismiss at 6. Obviously, one would have expected plaintiffs to concede that the question of whether they "have to go to arbitration" was no longer open. Their suggestion that this issue was debatable and their gratuitous observation that the Court of Appeals' dismissal of their appeal was incorrect suggested to the Court that plaintiffs had little interest in pursuing the only course available to them.

However, because dismissal is a strict sanction, the Court offered plaintiffs a final opportunity to demonstrate their intent to prosecute this case. On June 11, 1985 the Court denied both the motion to dismiss and the motion to amend, without prejudice. The Court also ordered that:

Plaintiffs shall have thirty days from the date of this Order to file a status report with the Court, detailing the steps that plaintiffs have taken to comply with the year-old Court order requiring plaintiffs to submit their claims to arbitration. If, in thirty days, the Court receives no report or learns that arbitration is not yet underway, defendant's motion to dismiss because of failure to prosecute and disobedience to Court orders will receive reconsideration.

Thirty days later, plaintiffs filed their report. Surprisingly, plaintiffs admitted that an arbitration demand had not yet been filed, although plaintiffs did suggest that they had managed to obtain a copy of the arbitration rules and were "studying the rules for initiating arbitration." [4] In short, the plaintiffs' pleading was non-responsive and completely unsatisfactory.

According to the terms of the Court's order of June 12, 1985, the Court will now turn to a reconsideration of defendant's motion to dismiss.

■ Standard, in its May 17th motion, argues that this case should be dismissed because of plaintiffs' failure to prosecute this action, *see* Fed.R.Civ.P. 41(b); Local Rule 1–14, and because of plaintiffs' blatant disregard of court orders and rules. The Court now agrees with defendant's position.

■ The federal courts possess undisputed authority to control their dockets and to dismiss those cases that plaintiffs fail to prosecute. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). Such a dismissal is proper if, in view of the history of the litigation, the litigant has failed to exercise reasonable diligence in pursuing the case. *See, e.g., Cherry v. Brown-Frazier-Whit-*

---

**3.** According to plaintiffs, the Order does not say that the plaintiffs may *"only* then file," and so its instruction on the filing of amendments is merely permissive and not restrictive. While plaintiffs are correct as a matter of semantics, in the context of the litigation and in light of the rest of the opinion, the interpretation offered by

plaintiff is, at best, a somewhat frivolous excuse for ignoring Court Orders.

**4.** Arbitration rules are, of course, designed for lay persons; thus, the Court has serious reservations about the amount of "study" required to file a "fill-in-the-blanks" arbitration demand.

*ney,* 548 F.2d 965, 969 (D.C.Cir.1976). Of course, the question of whether an action is being pursued with "reasonable diligence" —as opposed to "protracted delay"—is a highly factual inquiry, to be determined upon a consideration of all pertinent circumstances. *See Link,* 370 U.S. at 634–35, 82 S.Ct. at 1390–91. However, the district courts are not entirely without guidance in exercising this discretion.

■ It is clear, for example, that a "single act of misconduct" does not usually justify a dismissal. *Trakas v. Quality Brands,* 759 F.2d 185, 188 (D.C.Cir.1985); *Camps v. C & P Telephone Co.,* 692 F.2d 120, 123 (D.C.Cir.1981); *Jackson v. Washington Monthly Co.,* 569 F.2d 119 (D.C.Cir. 1977). In addition, dismissal is generally not warranted where the conduct in question is "inadvertent" or "excusable." *See Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958).

■ On the other hand, dismissal is clearly an appropriate sanction where, as here, a litigant has engaged in a "course of protracted neglect." *Jackson v. Washington Monthly Co.,* 569 F.2d 119, 121 (D.C.Cir.1977). Such neglect includes not only failure to pursue the litigation in the district court but also any failure to prosecute in an "alternative forum" such as an agency or arbitration proceeding. *See Allied Air Freight, Inc. v. Pan American World Airways, Inc.,* 393 F.2d 441, 445 (2d Cir.), *cert. denied,* 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968). Dismissal for failure to prosecute is particularly appropriate when such a failure is coupled with disobedience to court orders or a disregard of established rules. *See Sheaffer v. Warehouse Employees Union Local No. 730,* 408 F.2d 204, 205 (D.C.Cir.), *cert. de-*

*nied,* 395 U.S. 934, 89 S.Ct. 1996, 23 L.Ed.2d 449 (1969).

■ Although prejudice to opposing counsel is not a condition of dismissal, *Cherry,* 548 F.2d at 970 n. 49, the prejudice to the opposing party—in terms of time and expense—may be considered. In fact, recent decisions suggest that prejudice may be presumed where plaintiff fails to diligently prosecute an action. *See, e.g., Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37 (2d Cir.1982).

The Court also takes note of the larger concerns of "just, speedy and inexpensive" determination of civil cases, Fed.R.Civ.P. 1, that are frustrated when the Court is required to spend inordinate amounts of time dealing with recalcitrant litigants. Experience teaches that one irresponsible party's repeated delays can cause a ripple effect of delay and postponement in the Court's entire calendar. Thus, if the district courts are to avoid exacerbating the already heavy backlog of litigation, the power and willingness to draw the line on dilatory litigants "must be more than theoretical." *Automated Datatron, Inc. v. Woodcock,* 659 F.2d 1168, 1170 (D.C.Cir.1981). *See also National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (suggesting need for credibility in enforcement if discovery sanctions are to have required deterrent effect).

In the present case, plaintiffs' record of dilatory prosecution speaks for itself. As the record shows, almost a year has passed since plaintiffs were first ordered to proceed to arbitration. Over six months have passed since the Court of Appeals dismissed plaintiffs' frivolous appeal of that order. In those six months, plaintiffs have ignored or otherwise failed to comply with three Court orders.[5]

---

5. As noted *supra,* fn. 4, plaintiffs offer an "excuse" for noncompliance that does not justify their ignorance of Court orders. Both local rules and the ethical obligations of the bar require considerably more of counsel than to sit back and hope the Court is able to find him when orders are issued. *See* Reply Memorandum in Support of Standard Motion to Dismiss.

At the very least, plaintiffs became aware of this Court's continuing efforts to prod them to action when they received Standard's Status Report of April 18 "in response to the Court's Order of April 4, 1985." Rather than contact the Court or check the case files in the clerk's office to determine what they had missed, plain-

Perhaps the most telling indication of plaintiffs' unwillingness to prosecute this case in accordance with Court Orders was their response to the Order of June 12th, which provided that if "arbitration is not yet underway," in thirty days, the motion to dismiss would be reconsidered. Even this unveiled warning of imminent dismissal [6] failed to rouse plaintiffs from their "slumber," cf. Cherry, 548 F.2d at 969. To the surprise of the Court, plaintiffs did not initiate the long-overdue arbitration process in the thirty-day deadline. Instead, plaintiffs nonchalantly suggested that they had just managed to obtain the proper forms and would "momentarily" complete and serve them.

For the most part though, plaintiffs' status report—like their opposition to the motion to dismiss—focuses not on their own challenged conduct. Instead, plaintiffs' briefs on this issue repeatedly question the costs and necessity of arbitration, the legality and accuracy of this Court's (and this Circuit's) opinions, and, in general, treat the issue of arbitration, which has long been settled, as a proper subject for argument. Given this implied belief in their right to "deal with the Court on [their] own terms, as and when [they] pleased," the Court has no reason to believe that plaintiffs have any intention of complying— promptly or otherwise—with the orders of

this Court. See Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 949 (9th Cir.1976).

Plaintiffs' delay in this action is long-standing; their refusal to follow the rules and orders of this Court is well documented. They have offered no viable reason[7] for allowing this litigation to proceed. In fact, as previously noted, it may have been appropriate to dismiss this action at an earlier time. In any event, the time has now come when dismissal is appropriate and necessary.[8]

The Court does not mean by this opinion to impugn the integrity of plaintiffs, nor does it mean to suggest any comment on the merits of plaintiffs' claims, but it is obvious that plaintiffs were desperately scrambling to avoid the arbitration process. One can gather that plaintiffs did not cherish the expense of arbitration and one might also surmise that they did not believe their claims would fare well in that forum. Nevertheless, the Court had entered the order, the appeal had been dismissed, and warnings to proceed had been ignored by the plaintiff. Cf. Bomate v. Ford Motor Company, 761 F.2d 713 (D.C. Cir.1985). If in light of this record, plaintiffs still hoped they could somehow delay and thereby avoid arbitration, one cannot help but read in this record an assurance that hope springs eternal. Litigation, however, should enjoy a significantly shorter lifespan.

---

tiffs blithely ignored the existence of outstanding Court orders.

**6.** See Camps, 692 F.2d at 125 (suggesting that "advance warning" which "pinpoint[s]" possibility of dismissal and details steps necessary to avoid dismissal is recommended prerequisite to dismissal of pro se litigant).

**7.** Indeed, plaintiff Walter Ames' status as counsel renders plaintiffs ill-equipped to plead leniency on one of the leading grounds for avoiding dismissal, the judicial aversion to "visit[ing] the sins of the lawyer upon the client...." See Woodcock, 596 F.2d at 121. Where, as here, a member of the bar is appearing pro se (for himself and his spouse), any such propensity to lenience may be tempered by the knowledge that plaintiff, equipped with the knowledge and expertise of a practicing attorney, bears full responsibility for his own fate. In addition, the

Court warned Mr. Ames, at an early stage in this litigation, of the self-evident dangers of self-representation. Given the decision to disregard this warning, and plaintiff's legal training and experience, no more need be said on this issue.

**8.** The Court has considered alternative sanctions but is of the opinion that there is no less drastic alternative that would be appropriate. See Trakas, at 187–88 (Scalia, J., dissenting). This is not a case where there was a single disobedience of court orders or a single failure to appear, which could be partially remedied by ordering attorneys' fees for opposing counsel. Nor is this a situation, as is the case in discovery disputes, where issues may be precluded or claims stricken as an appropriate sanction. Where, as here, a party, over a period of many months and in defiance of the Court, refuses to prosecute an action, an order of dismissal is the only appropriate sanction.

Defendant's Motion to Dismiss will be granted; an appropriate Order will issue in accordance with the terms of this opinion.

