Audeliz **FONTANEZ**, Plaintiff,

v.

**UNITED STATES CUSTOMS SERVICE, et al.**
**Defendants.**

**No. CIV. 01–90910(RJL).**

United States District Court, District of Columbia.

Sept. 23, 2003.

Fred E. Haynes, U.S. Attorney's Office, Washington, DC, for US Customs Service.

## MEMORANDUM OPINION

LEON, District Judge.

Plaintiff Audeliz Fontanez brings this action under the Freedom of Information Act to obtain documents from the United States Customs Service [1] ("Customs"). Presently before the Court are cross-motions for summary judgment. After due consideration of the parties' submissions and the relevant law, the Court grants the defendants' motion for summary judgment, and denies the plaintiff's motion for summary judgment.

## I. Background

Plaintiff Audeliz Fontanez ("Fontanez"), who is proceeding pro se and is incarcerated, filed suit against the United States Customs Service ("Customs"), and two Customs employees under the Freedom of Information Act, in particular, 5 U.S.C. Section 552(a).[2] Fontanez' primary request was for a specific document that was allegedly expedited [**this is the word that the defendants use in their motion**] on January 30, 1996, by Agent Robert Jordan, Customs Inspector Supervisor. According

to Fontanez, Agent Jordan testified at Fontanez' trial for conspiracy and possession of cocaine, that a Treasury Enforcement Communications System ("TECS") query had been sent on January, 30, 1996, to the Alcohol, Tobacco and Firearms Agency. Compl. at 5, 6 (citing Exhibit 19). Fontanez filed a motion for summary judgment on August 14, 2001, asking this Court to enter an order "compelling [Customs] to release the material requested, not limited to: the TECS query dated on or about January 30, 1996." Pl.'s Mot. for Summ. J. ¶ 5(a). Fontanez stated that if Customs did not have such a document in its records, that it state as much in an affidavit. Pl.'s Mot. for Summ. J. ¶ 5(b).

On January 11, 2002, Customs filed a cross-motion for summary judgment asserting that its searches were reasonably calculated to uncover all responsive documents and thus it had fulfilled its obligations under FOIA. Mem. in Supp. of Defs.' Mot. for Summ. J. at 1. In support of this motion, Customs included declarations from Stephen Plitman,[3] Lee Kramer,[4] Roberto Fernandez,[5] and Allan Doody;[6] each declaration included a Vaughn Index which provided an itemized list of informa-

---

1. The United States Customs Service is an agency of the United States Treasury Department.

2. All sections of 5 U.S.C. § 552 relate to "public information; agency rules, opinions, orders, records, and proceedings." 5 U.S.C. § 552.

3. Plitman is the Assistant Director, Information Disclosure Branch, Administration, Planning and Policy Division, Office of Investigations. Plitman Decl. ¶ 1. The Information Disclosure Branch is responsible for responding to FOIA requests made to the Customs Service. Plitman Decl. ¶ 2.

4. Kramer is Branch Chief, Disclosure Law Branch, International Trade Compliance Divi-

sion, Office of Regulations and Rulings at the U.S. Customs Service. The Disclosure Law Branch of the Office of Regulations and Rulings is responsible for responding to administrative appeals of FOIA requests within the Customs Service. Kramer Decl. ¶ 2.

5. Fernandez is the Special Agent in Charge, Office of Investigation, at the U.S. Customs Service in San Juan, Puerto Rico. Fernandez Decl. ¶ 1. The Information Disclosure Branch, which is charged with the responsibility of responding to FOIA requests, is within the Office of Investigations of the Customs Service. Fernandez Decl. ¶ 2.

6. Doody is the Special Agent in Charge, Office of Investigation, at the U.S. Customs Service in Baltimore, Maryland. Doody Decl. ¶ 1.

tion and explanations of each of the searches. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C.Cir.1973) (finding that a government agency must provide, with adequate specificity, an itemized and indexed set of statements when refraining from disclosing certain materials).

On January 15, 2002, Fontanez filed an opposition to Customs' cross-motion for summary judgment, and specifically referenced Plitman's affidavit. Fontanez claimed this case could be resolved if Plitman submitted another affidavit confirming that Agent Jordan did not expedite a TECS query dated January 30, 1996, or prior to that date. Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 1. In response to this single request, Customs issued a supplemental declaration by Plitman stating, "all of the records of the Customs Service, particularly the [TECS], confirms that no records entitled a Customs TECS query dated January 30, 1996 or prior to that date, was expedited by Inspector Jordan concerning or relating to any investigation of Mr. Fontanez." Supplemental Plitman Decl. ¶ 5.

Fontanez then sent a letter to Plitman on March 22, 2002, stating that the matter would be resolved if Plitman provided Fontanez with confirmation that "no such TECS II query exist or was sent by any authorized employee within the 'MRU' or outside the unit on January 30, 2002." Letter from Fontanez to Plitman of March 22, 2002. Responding to this request, Customs submitted a second supplemental declaration of Plitman, in which he directly addressed this issue, attesting that a complete and thorough search of all of Customs' records, particularly of the TECS, did not uncover any records processed by any authorized employee concerning, or related to, an investigation of Fontanez. Supplemental Plitman Decl. ¶ 6. Fontanez did not respond to this second supplemental declaration. On October 24, 2002, this Court ordered that each party submit in writing by November 8, 2002, a description of what, if any, developments occurred in this matter since the last dispositive motion was filed with the Court. Responding to the Court order, Customs submitted a status report which directly addressed Fontanez' single request for a "Customs TECS query dated January 30, 1996 or prior to that date expedited by agency Jordan." Defs.' Notice of Filing and Status Report at 2. In its report, Customs emphasized that Fontanez has essentially conceded that if Plitman asserted an additional declaration, which he did, confirming that the query in question did not occur, then all of the issues would be resolved.[7] Fontanez failed to respond to the Court order.[8]

## II. Discussion

A court will only grant summary judgment when "the pleadings, deposi-

---

7. While Fontanez' opposition and letter, and his corresponding responses, suggests there may no longer a dispute between the parties, the parties have not sought a stipulated dismissal and thus the Court addresses the pending motions for summary judgment as if there still were.

8. Pursuant to the Federal Rules of Civil Procedure ("FRCP"), Rule 41(b), this Court could dismiss this case because of Fontanez' failure to comply with an order of this Court. Fed. R.Civ.P. 41(b) ("[F]or failure of the plaintiff to prosecute or to comply with these rules or any order of the court, the court may dismiss on its own motion."). However, the Court declines to do so because summary judgment is appropriate and because courts are reluctant to apply FRCP 41(b) when there has only been a single act of misconduct. *E.g., Ames v. Standard Oil Company*, 108 F.R.D. 299, 302 (D.D.C.1985) (quoting *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 121 (D.C.Cir. 1977) (finding that dismissal is appropriate when a party is engaged in a "course of protracted neglect")).

tions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). To oppose a motion for summary judgment, the nonmoving party must present evidence in the form of affidavits, depositions, answers to interrogatories, admissions on file, or other information gathered during discovery, rather than merely allegations in support of his claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(c). When responding to a FOIA request, an agency does not have to search every record in its system and the agency does not have to demonstrate that all responsive documents were found and that no other relevant documents possibly exist. *Perry v. Block,* 684 F.2d 121, 128 (D.C.Cir.1982) (discussing that the primary focus is whether the government's search for responsive documents was adequate and not whether any further documents might conceivably exist). Summary judgment, in FOIA cases, is appropriate when an agency submits a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v.*

*United States Coast Guard,* 180 F.3d 321, 325–26 (D.C.Cir.1999) (quotation omitted).

■ Customs has met its burden under FOIA here because it has conducted a "search reasonably calculated to uncover all responsive records." *Kowalczyk v. Department of Justice,* 73 F.3d 386, 388, 389 (D.C.Cir.1996) (citing *Truitt v. Department of State,* 897 F.2d 540, 542 (D.C.Cir. 1990)); *see also Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health,* 844 F.Supp. 770, 776 (D.D.C.1993). Fontanez first made a FOIA request in June 2000. Then, on August 3, 2000, he narrowed that request to include only those "documents relating to a narcotics or firearms seizure at the address 2440 Masher [sic] Street, Philadelphia, PA for the period of 1986 through 1990." Compl. at Ex. 6. Customs conducted multiple searches in response to Fontanez' FOIA request: Customs provided him with eleven pages of redacted documents pursuant to exemptions (b)(2),[9] (b)(7)(C),[10] and (b)(7)(E) [11] of FOIA. Additionally, a search of the TECS indicated that responsive records also may be located in Baltimore and San Juan, Puerto Rico. Memo. in Support of Defs.' Mot. for Summ. J. at 2. Accordingly, after the case was referred to these two field offices, Customs provided Fontanez with an additional seven pages from San Juan and 109 pages from Baltimore.[12] Memo. in Support of Defs.' Mot. for Summ. J. at 3. Fontanez, however, filed two appeals seeking administrative review of these searches; neither request lead to disclo-

9. Pursuant to 5 U.S.C. § 552(b)(2), an agency can withhold internal codes, used for indexing, storing, locating, retrieving and distributing information, present on printed copies of computerized investigative records.

10. Pursuant to 5 U.S.C. § 552(b)(7)(C), names of Custom employees (including officers, managers, and staff), witnesses, co-conspirators, non-suspects and other parties can be withheld to protect their identification.

11. Pursuant to 5 U.S.C. § 552(b)(7)(E), an agency does not have disclose whether the information was retrieved from a public or confidential database system.

12. Many of these additional documents that Customs provided to Fontanez contained redactions in accordance with FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(E).

sure of the alleged query dated January 30, 1996. Memo. in Support of Defs.' Mot. for Summ. J. at 5. Then, Fontanez expanded his original FOIA request, which covered 1986 through 1990, to include 1986 through 1993. Still, Customs found no other responsive records different from those that were originally located. Memo. in Support of Defs.' Mot. for Summ. J. at 5. This more expansive search yielded twenty-one new records which were provided to Fontanez. Memo. in Support of Defs.' Mot. for Summ. J. at 7.

The searches performed by Customs and described above are sufficiently reasonable and therefore warrant summary judgment. Customs has satisfied the requirement of reasonableness by setting forth "sufficient information in its affidavits for a court to determine that the search was adequate." *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C.Cir.1995) (discussing the adequacy of Customs' Search when evaluating when to grant summary judgment). The affidavits submitted here describe in great detail the chronology of events and the procedures by which Customs goes about responding to FOIA requests. In this instance, Customs used the TECS system to respond to Fontanez' request. This system enables Customs to search for relevant documents using personal identifiers such as name, social security number, date of birth, street address or post office box number, and/or passport number. Plitman Decl., ¶ 40. This system also allows for other search terms; for example, in this case Customs ran a search for Crowley,[13] a term extracted from Fontanez' FOIA request. Plitman Decl., ¶¶ 28, 29. The Court concludes that the steps taken by Customs in response to Fontanez' request were "entirely consistent with U.S. Cus-

toms Service procedures adopted to ensure equitable responses to all persons seeking access to records under the FOIA." Plitman Decl., ¶ 52; *Nation*, 71 F.3d at 890 (quotation omitted) (affidavits are reasonably detailed when they set forth the search terms and type of search performed and aver that all files likely to contain responsive material were searched).

Moreover, Fontanez has failed to provide any proof that other documents in fact exist. His repeated assertion that the document in question is missing is merely a hypothetical assertion, which is insufficient to raise a material question of fact with respect to the adequacy of Customs' search. *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (C.A.D.C.1990) (explaining that the nondisclosing party must provide proof that the documents exist because a person's own conviction is pure speculation); *see generally* Vaughn Indexes Attach. to Decl. of Plitman, Decl. of Kramer, Decl. of Fernandez, and Decl. of Doody. Therefore, for the reasons discussed above, this Court dismisses Fontanez' claim with prejudice and grants summary judgment in favor of the defendants.

### III. Order

For the foregoing reasons, it is on this 23rd day of August 2003, hereby

**ORDERED** that defendants' motion for summary judgment [# 16] is GRANTED; it is further

**ORDERED** that plaintiff's motion for summary judgment [# 5] is DENIED;

**SO ORDERED.**

---

13. Consequently, Customs ran a search for "Crowley American Transport" because the responsive records for "Crowley" revealed the name of this company.