**ROADTECHS, INC., Plaintiff,**

v.

**MJ HIGHWAY TECHNOLOGY, LTD., et al., Defendants.**

No. Civ.A. 3:99CV573.

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 8, 2000.

Christopher L. Perkins, Vernon E. Inge, Jr., LeClair Ryan, Richmond, Virginia, for plaintiff.

Donald J. Richardson, Robert E. Eicher, Williams, Mullen, Clark & Dobbins, Richmond, Virginia, for MJ Highway.

Shawn A. Copeland, David A. Rudlin, Hunton & Williams, Richmond, Virginia, for MAI.

## MEMORANDUM OPINION

PAYNE, District Judge.

Plaintiff, RoadTechs, Inc. ("RoadTechs") has filed a Motion to Show Cause against the defendants, MJ Highway Technology, Ltd. ("MJ Highway") and Marketing Associates, Inc. ("MAI") to show cause why they should not be held in contempt of a Consent Order entered by the Court on September 3, 1999 ("the Consent Order").[1] RoadTechs has also filed a Motion to Modify the Consent Order, seeking to have the injunction against it removed and asking the Court to withdraw the reference to arbitration.

For the reasons set forth below, the Court finds that MJ Highway willfully, intentionally and in bad faith violated the terms of the Consent Order, finds that MJ Highways is in civil contempt of a court order and concludes that it is appropriate to impose monetary sanctions on MJ Highway for that conduct. Furthermore, the Court finds that the injunction against RoadTechs in paragraph (3) of the Consent Order must be eliminated. However, the Court denies, without prejudice to renew, the request to withdraw the reference to arbitration.

## STATEMENT OF FACTS

RoadTechs and MJ Highway are parties to a License Agreement dated March 12, 1996 and amended on September 1, 1997 by which RoadTechs was accorded an exclusive license (the "License Agreement") in the United States for the sale, application and use of certain processes and products known, inter alia, as "RoadFlex" and "HotCrete."[2] Thereafter, on September 25, 1998 and in reliance on the validity and effectiveness of the License Agreement, RoadTechs entered into a Marketing Representative Agreement, pursuant to which MAI became RoadTechs's sole means of marketing RoadFlex in the United States.

Shortly after the Marketing Representative Agreement was executed, there arose disputes between RoadTechs and MAI respecting the quality of the RoadFlex supply provided by RoadTechs to MAI. Then, in April 1999, MAI's President, David Simmons, asked James McIntosh, President of MJ Highway, to identify an alternate source of supply for the RoadFlex product. It is undisputed that, as the result of that entreaty, McIntosh introduced Simmons to Lilley Construction Services, Ltd. ("Lilley"), a European company also engaged in the manufacture of RoadFlex and related materials, apparently pursuant to a license from MJ Highway.

On June 18, 1999, MJ Highway notified RoadTechs that the License Agreement was terminated. Not long thereafter, RoadTechs learned that MAI was purchasing RoadFlex from Lilley.[3] As a result of these events, RoadTechs filed a suit in the Circuit Court for the County of Goochland, Virginia ("Circuit Court" or the "State Court") seeking to enjoin MJ Highway from allowing MAI to use or apply in the United States any process or product covered by the License. On July 9, 1999, the Circuit Court issued a Decree of Temporary Injunction ("Temporary Injunction") which was extended to remain in effect until September 17, 1999.

On August 11, 1999, with the consent of its co-defendant, MAI, MJ Highway re-

---

1. By agreement of RoadTechs and MAI, the hearing respecting whether MAI has violated the Consent Order has been deferred, pending efforts by those parties to resolve by mediation all disputes between them, including the issues raised by the Motion to Show Cause.

2. The License Agreement and the amendment are collectively Plaintiff's Show Cause Hearing Exhibit 8 and are collectively hereafter referred to as the "License".

3. RoadTechs recently discovered that, on September 19, 1996, MJ Highway purported to confer on Lilley an exclusive license which, by failing to explicitly limit the geographic areas to which the license pertained, included the United States within the geographic scope of the license.

moved the action to federal court. On August 16, 1999, MJ Highway filed a Motion to Compel Arbitration and a Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction. Those motions were resolved when, on September 3, 1999, counsel for MJ Highway and Road-Techs, with the knowledge of counsel for MAI, presented the Court with a Consent Order which was entered on the day it was presented. The opening paragraph of the Consent Order recited that RoadTechs and MJ Highway, "by counsel ... jointly moved for entry of this Consent Order staying proceedings in the action between them and continuing the preliminary injunction entered by the Circuit Court of Goochland County, Virginia, with some modifications, until further Order of this Court." Counsel for RoadTechs and MJ Highway endorsed the Consent Order under the prayer "WE ASK FOR THIS."

The Temporary Injunction, *inter alia*, prohibited MJ Highway "from permitting the use and/or application of the Process, the Associated Materials or the Associated Equipment, as those terms are defined in the License Agreement, by anyone other than RoadTechs in all of the territory covered by the License Agreement." The Consent Order continued that prohibition verbatim and continued the License Agreement "in effect until further Order of this Court or until the conclusion of the arbitration between MJ Highway and RoadTechs." Also, in a separate provision of the Consent Order, RoadTechs agreed not to seek "any additional contracts to sell materials identified in the License Agreement which it is required to be licensed to sell until further Order of this Court or the conclusion of the arbitration between RoadTechs and MJ Highway."

On October 15, 1999, RoadTechs filed a Motion to Show Cause alleging that MJ Highway and MAI were in violation of the Consent Order. On the same date, Road-Techs filed a motion seeking permission to conduct limited discovery of MJ Highway and MAI for use in the hearing to be held on the Motion to Show Cause. On November 3, 1999 (the "November 3 Order"), after conferring by telephone conference with counsel, the Court ordered that Road-Techs was entitled to: (1) propound written discovery respecting the alleged violations of the Consent Order; (2) take the deposition of any person who submitted an affidavit in opposition to the Motion to Show Cause; and (3) permitting depositions of a representative designated by MJ Highway and by MAI under Fed.R.Civ.P. 30(b)(6). The November 3 Order required counsel to agree upon a schedule for responding to written discovery and the conduct of depositions. The hearing on the Motion to Show Cause was set for December 16, 1999.

On November 5, 1999, RoadTechs propounded the limited written discovery permitted by the November 3 Order and issued notices for the Rule 30(b)(6) depositions to be taken on November 23 for MJ Highway and November 30 for MAI. On November 18, 1999, counsel for all the parties tendered to the Court an Order Regarding Discovery Schedule. That Order reflected a discovery and deposition schedule, that had been agreed to by counsel for MJ Highway, MAI and Road-Techs but counsel for MJ Highway was unable to confirm deposition dates of MJ Highway officials and the schedule for discovery was delayed. With the hearing date fast approaching, counsel for Road-Techs and MAI tendered the schedule which previously had been agreed to by MJ Highway's counsel. The Order Regarding Discovery Schedule was entered by the Court on November 22, 1999 ("November 22 Order").

By November 18, 1999, the date on which the November 22 Order was tendered for entry, counsel for MJ Highway had moved to withdraw, *inter alia*, because of MJ Highway's retrenchment from discovery agreements made by its counsel in compliance with the November 3 Order. (See Memorandum Of Williams, Mullen, Clark & Dobbins In Support Of Motion

For Leave To Withdraw As Counsel and exhibits thereto). Indeed, by letter dated November 18, 1999, MJ Highway's counsel in England notified the Court that MJ Highway was terminating service of its counsel in the action. *Id.* Ex. A.

The communications from MJ Highway's counsel in England and the facts which prompted the motion of withdrawal both made clear that MJ Highway did not intend to provide any of the document or deposition discovery required by the November 3 Order or the November 22 Order. And, in fact, to date, MJ Highway has provided no discovery at all.

However, as a result of discovery provided by MAI, RoadTechs ascertained that, beginning on April 13, 1999 and continuing through September 1, 1999, MAI ordered from Lilley 340 tons of RoadFlex and 20 tons of HotCrete.[4] According to Simmons, during the time when those materials were being ordered, shipped and received, he had two, or perhaps three, conversations with McIntosh, MJ Highway's President. From these conversations, it was Simmons' understanding that McIntosh was then aware that MAI was ordering, that Lilley was shipping, and that MAI was receiving substantial quantities of RoadFlex and HotCrete.[5]

According to Simmons, all of the RoadFlex and HotCrete was shipped by Lilley, and received by MAI, after the Temporary Injunction was issued by the Circuit Court on July 9, and much of it was received by MAI after the Consent Order was issued on September 3. The record suggests that many of the orders for RoadFlex and HotCrete were placed by MAI before entry of the Temporary Injunction. However, there were substantial periods of delay between placement of the order and shipment of the product and between shipment and receipt of the product. Considering the state of the record respecting the length of the delay between the dates of order and shipment and between the dates of shipment and receipt, it is without dispute true that all 20 tons of the HotCrete were shipped and received after the Consent Order was entered on September 3 and that 160 tons of the 340 tons of RoadFlex ordered by MAI were shipped and received after the Consent Order was entered on September 3.

On November 8, 1999, MJ Highway filed its brief in opposition to the Motion to Show Cause.[6] With its brief in opposition, MJ Highway filed affidavits of its lawyer, Glendon Stentiford Stone, and its president, James McIntosh (Plaintiff's Show Cause Hearing Exhibit 2 and Exhibit 3). McIntosh averred that he was aware of the entry of the Temporary Injunction in July 1999 and that he knew thereafter that shipments of materials covered by the License Agreement had been made to MAI. Stone's affidavit states that the Temporary Injunction was explained to MJ Highway and he confirms that MJ Highway introduced MAI to companies in England "a considerable time ago." (Plaintiff's Show Cause Hearing Exhibit 2). Stone also avers that he has "learnt that since the granting of the injunction materials have been supplied from England to ... [MAI]." (*Id.*). In sum, both McIntosh and Stone have made sworn statements which, directly, and by implication, assert that MJ Highway has not violated the terms of any injunction and that MJ Highway has not been involved in, or knowledgeable of, the shipments of the licensed material to MAI by Lilley.

Confronted with the admissions made by McIntosh and Stone and with their protestations of innocence in opposition to the Motion to Show Cause, RoadTechs found it necessary to depose the affiants Stone and McIntosh, as well as one designated repre-

---

4. Simmons Deposition; Plaintiff's Show Cause Hearing Exhibit 4; Simmons Affidavit.

5. Simmons did not testify that McIntosh was aware of the precise quantities ordered by MAI, shipped by Lilley and received by MAI.

6. On the same date, MJ Highway filed a second motion to dismiss the motion for lack of subject matter jurisdiction. That motion was denied by Memorandum Opinion entered on January 19, 2000.

sentative of MJ Highway [7] in order to determine the truth of the assertions made in the affidavits. Those depositions, and the documents, also were necessary to ascertain the facts surrounding the ordering, shipping and receipt of RoadFlex and Hot-Crete while the Temporary Injunction and the Consent Order were in effect.[8] The discovery was especially important given that: (1) Simmons's affidavit showed that receipt of the licensed product continued until September 27, 1999, postdating by 24 days the entry of the Consent Order; and (2) Simmons's deposition confirmed: (a) that all of the licensed material on order had been shipped or received after entry of the Temporary Injunction; and (b) that a substantial segment of the licensed material had been shipped (and received) after entry of the Consent Order on September 3.

On November 24, 1999, it came to appear that, notwithstanding a previous agreement by counsel for MJ Highway to provide both deposition discovery and limited document discovery, MJ Highway refused to comply with those agreements or with discovery orders.[9] Accordingly, RoadTechs moved for entry of sanctions, including default judgment, against MJ Highway. By Order entered December 17, 1999 ("December 17 Order"), the Court found that MJ Highway was in default of its obligations under the November 3 Order and the November 22 Order.

Because communications from MJ Highway's English counsel to the Court raised grave doubts about the judgment and knowledge of English counsel underlying the advice given by that firm to MJ Highway respecting its obligation in the proceedings and to accord MJ Highway a vehicle for avoiding the consequences of following English counsel's advice rather than the correct advice being given by the company's American counsel, the Court declined to enter default judgment against MJ Highway. Therefore, the December 17 Order compelled MJ Highway to provide the previously ordered discovery of documents not later than December 31, 1999 and directed MJ Highway to make the affiants, Stone and McIntosh, and a representative designated under Fed. R.Civ.P. 30(b)(6) available for depositions not later than January 7, 2000. However, the December 17 Order expressly warned MJ Highway that failure to comply with its requirements likely would result in the entry of an order finding MJ Highway in default as respects the Motion to Show Cause. The hearing on the Motion to Show Cause was continued to January 18, 2000.

## DISCUSSION

It is against the foregoing factual background that the Court must assess: (i) whether MJ Highway has violated the terms of the Consent Order; (ii) the propriety of relieving RoadTechs from that part of the Consent Order imposing an injunction on RoadTechs's further business activity; and (iii) whether, as RoadTechs requests, the reference to arbitration should be withdrawn.

## I. VIOLATIONS OF THE DECEMBER 17 ORDER AND THE REQUESTED SANCTION OF DEFAULT JUDGMENT ON THE ISSUE WHETHER MJ HIGHWAY HAS VIOLATED THE CONSENT ORDER

It is clear that, in early April 1999, MAI approached MJ Highway and requested its

7. A deposition of that sort is permitted by Fed.R.Civ.P. 30(b)(6).

8. These depositions, and the limited document discovery permitted by the Court, also would serve to establish the extent of MJ Highway's involvement in those transactions and the extent which MJ Highway derived revenue from Lilley's role to MAI under the License Agreement between Lilley and MJ Highway. And, those documents and depositions would enable RoadTechs to test the truth of affidavit and deposition testimony offered by MAI in opposition to the Motion to Show Cause.

9. Shortly after MJ Highway's counsel in this action had agreed to the discovery schedule, MJ Highway purported to terminate the services of counsel.

president, James McIntosh, to identify a supplier of RoadFlex other than Road-Techs, the entity to which MJ Highway had contractually extended exclusive rights of distribution in the United States. The record establishes that MJ Highway provided that introduction to Lilley, a company to which MJ Highway had licensed European rights to RoadFlex (and perhaps even a license which overlapped the exclusive American rights which MJ Highway had granted to RoadTechs). It is undisputed that, during the period of time when MAI was ordering and receiving products of the type covered by the license, MAI's President, Simmons, was meeting with McIntosh and, according to Simmons, McIntosh was aware of the arrangements that MAI had made with Lilley for the shipping and receipt of RoadFlex and Hot-Crete into the United States.

Thus, on the current record, it is reasonable to infer that, during the pendency of the Temporary Injunction entered on July 9, 1999 and throughout the continuation thereof by the Consent Order, MJ Highway knowingly permitted the use and application of the Associated Materials and the Process, as defined in the License Agreement, in the United States by someone other than its exclusive American licensee, RoadTechs. That conduct violates the Temporary Injunction as continued by the Consent Order. That inference is, to some extent, rebutted by the sworn statements of Stone and McIntosh offered by MJ Highway in opposition to the Motion to Show Cause. For that reason, it was important for RoadTechs to receive relevant documents from MJ Highway and to take the depositions of Stone, McIntosh and a designated representative of MJ Highway. MJ Highway was informed by order of this Court and by a letter from its counsel in this action that it was important to provide the ordered discovery. MJ Highway also was informed both by its counsel in this action and by the Court of the likely consequences for failing to do so.

Under the law in this circuit, the sanction of default judgment should not be imposed unless the violation of the discovery order is in bad faith and the adversary in the action has been prejudiced in a material way. Also, the Court must take into account the need to deter the sort of conduct with which it has been confronted and the Court must consider the effectiveness of less drastic sanctions. *See United States v. Wright*, 187 F.3d 633 (table), 1999 WL 507119 at * 5 (4th Cir.1999) (*citing Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503–506 (4th Cir.1977)). An assessment of those factors follows.

### 1. Bad Faith On The Part Of MJ Highway

The record here establishes that MJ Highway acted in bad faith in refusing to provide the ordered discovery. Confronted with charges of wrongdoing, MJ Highway purposely filed pleadings, including affidavits, protesting its innocence and then, after realizing that the affiants and a representative of MJ Highway would be deposed under oath to test the truth of the affidavits, MJ Highway terminated the services of its counsel of record and then refused to provide the court-ordered discovery. All of that was done after the Court expressly explained the obligation to provide the discovery and warned of the consequences of failing to do so. And, it was accomplished after MJ Highway's counsel made similar, indeed stronger, warnings. The record here thus bespeaks a circumstance in which a party knew full well its obligations to comply with court-ordered discovery, was warned that failure to do so likely would lead to entry of a default judgment on the Motion to Show Cause and nonetheless refused to obey. That conduct amounts to bad faith.

### 2. Prejudice To RoadTechs

It is beyond question that RoadTechs has been prejudiced in presenting its contention that there has been a violation of the Consent Order because it has been

unable effectively to test the assertions and protestations of innocence advanced in the affidavits of Stone and McIntosh. Certainly, the limited evidence garnered by RoadTechs permits an inference that MJ Highway knowingly and intentionally permitted the use and application in the United States of the process and product licensed to RoadTechs, conduct which violates the Temporary Injunction and the Consent Order. However, MJ Highway filed pleadings and affidavits containing assertions that no violation of those court orders had occurred. The information in the affidavits, if true, could have blunted, or eliminated, the inference of violative conduct.

The standard means of testing the validity of sworn assertions is to allow discovery of documents (limited to the issues made up by the motion and the response thereto) and to permit sworn examination of the affiants and of a representative chosen by the allegedly offending party and designated, pursuant to Fed.R.Civ.P. 30(b)(6), to testify on the party's behalf about specific, limited topics. The refusal of MJ Highway to afford RoadTechs the standard vehicle for testing the affidavits on which MJ Highway relied to demonstrate the absence of a violation of the Consent Order was prejudicial to Road-Techs.[10]

### 3. Deterrence Of Like Conduct

There is no serious doubt that courts must act to deter the refusal to engage in discovery, particularly after there have been court orders requiring that discovery be provided. Properly limited discovery is the linchpin of fair and efficient litigation in civil actions. It also is a critical tool in the refinement and elimination of issues.

And, where, as here, there is an issue whether a court order has been violated, discovery on that topic is central to the administration of justice. Failure to sanction the obdurate, deliberate refusal of MJ Highway to provide RoadTechs the court-ordered discovery would amount to evisceration of the judicial process and to a default of the Court's obligation to insure that its orders are obeyed.

### 4. Less Drastic Sanctions Have Not Been Successful

Further, the Court has considered, and in fact has used, less drastic sanctions, but to no avail. MJ Highway refused to provide discovery ordered by the Court and agreed to by its counsel. On December 17, 1999, the Court rejected the entreaty of RoadTechs for entry of default judgment and ordered MJ Highway once again to provide the discovery outlined in the November 22 Order. And, although it imposed attorney's fees as sanctions for violating the November 22 Order, the December 17 Order gave MJ Highway one final opportunity to provide the required discovery without risk of default. At the same time, the Court cautioned that the failure to provide the discovery likely would result in entry of default judgment. Nonetheless, and having been duly and thoroughly warned, MJ Highway violated the December 17 Order, thereby demonstrating that sanctions less than default are ineffective.

### 5. The Sanction Of Default Judgment On The Motion To Show Cause And The Consequence Thereof

On this record, then, it is apparent default judgment should be entered on the

---

**10.** It is significant to note that MAI has satisfied its obligations under the November 3 Order and the November 22 Order. As a result, RoadTechs has developed evidence that supports the contention that MJ Highway violated the Temporary Injunction and the Consent Order. The court-ordered discovery from MJ Highway is important to confirm the information obtained from MAI and to ascertain the extent of MJ Highway's knowledge of, involvement in, and economic benefit from, Lilley's transactions with MAI and about Lilley's apparent efforts to penetrate the American market. The deprivation of the discovery from MJ Highway also prejudices RoadTechs to ascertain the nature and extent, if any, of MAI's violation of the court imposed prohibitions.

issues raised by the Motion to Show Cause because that is the only sanction sufficiently effective to remedy the refusal of MJ Highway to obey the December 17 Order and to cure the prejudice to RoadTechs created by MJ Highway's recalcitrance. On the basis of the default and in perspective of the evidence submitted by Road-Techs at the hearing on January 18, 2000, the record establishes that MJ Highway violated the Temporary Injunction entered by the State Court on July 9 and continued in effect by the Consent Order. In particular, MJ Highway knowingly, willfully and in bad faith "permitt[ed] the use and/or application of the Process and the Associated Materials ... as those terms are defined in the License Agreement" from July 12 through September 27, 1999 by MAI in the "territory covered by the License Agreement."

## II. WHETHER MJ HIGHWAY SHOULD BE HELD IN CONTEMPT AND FINED FOR THE VIOLATIONS OF THE CONSENT ORDER

 Next, it is necessary to assess whether MJ Highway should be held in contempt of court for having violated the Consent Order. It has long been recognized that federal courts have inherent jurisdiction to protect and enforce their orders and judgments. *See Riggs v. Johnson County,* 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867). Whether violation of a Consent Decree will result in a finding of contempt with its attendant consequences requires assessment of four factors. *See Omega World Travel, Inc. v. Omega Travel, Inc., et al.,* 710 F.Supp. 169, 170 (E.D.Va.1989) *aff'd,* 905 F.2d 1530 (table) 1990 WL 74305 (4th Cir.1990). They are:

(1) The existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;

(2) A showing that the decree was in the movant's "favor;"

(3) A showing that the alleged contemnor by its conduct violated the terms of the decree and had knowledge, at least constructive knowledge, of such a violation; and

(4) A showing that the movant's suffered harm as a result.

*Id.* Considering each of these factors on the basis of the record established by the proofs and by the default becomes the next task.

### 1. Knowledge Of The Order

MJ Highway acknowledges in its response brief and supporting affidavits that, from July 12, 1999 forward, there were in effect a valid Temporary Injunction and a Consent Order, respectively, of which it had knowledge. As MJ Highway says in its brief opposing the Motion to Show Cause, "the Consent Order, *inter alia,* continued the preliminary injunction pending the outcome of the arbitration." The undisputed record here is that, from July 12, 1999 forward, MJ Highway knew that it was enjoined from permitting others to use and/or apply the licensed Process or the Associated Materials in the United States. That injunction was continued in the Consent Order without interruption. On the basis of this record, MJ Highway knew at the time that it executed the Consent Order that it was violating the prohibition imposed by the Temporary Injunction and MJ Highway knowingly continued to permit MAI to receive licensed materials from Lilley until September 27.

### 2. Decree In RoadTechs's Favor

The provisions of the second paragraph of the Temporary Injunction and of paragraph (2) of the Consent Order clearly were in RoadTechs's favor by continuing in effect the License Agreement purportedly terminated by MJ Highway until further Order of this Court or the conclusion of the arbitration between MJ Highway and RoadTechs. The same provisions of the Consent Order and the Temporary Injunction were in RoadTechs's favor for the additional reason that they prohibited MJ Highway from permitting the use and/or

application of the licensed process or materials in the United States by anyone other than RoadTechs until further order of this Court or the completion of arbitration. There is no serious question but that these provisions were of great benefit to RoadTechs considering that just before RoadTechs instituted this action, MJ Highway had attempted to terminate the License.

### 3. Has There Been A Violation Of The Consent Order And Did MJ Highway Have Actual Or Constructive Knowledge Of It?

The affidavit of Simmons and his deposition testimony, along with the affidavit of McIntosh and Stone, show clearly that MJ Highway knew that MAI intended to bring materials covered by the License Agreement into the United States during the period of the License Agreement. That was made clear to MJ Highway, in April 1999, when MAI's Simmons entreated McIntosh to provide an introduction to Lilley, the alternate supplier of a licensed material, RoadFlex. MJ Highway provided that introduction. The ordering of the RoadFlex and HotCrete products covered by the License began immediately thereafter. According to Simmons, he and McIntosh thereafter had conversations which led Simmons to understand that McIntosh was aware that MAI had placed those orders with Lilley and the shipments to MAI were occurring. Thus, on the record and in perspective of the default which has been entered,[11] MJ Highway knowingly violated the Temporary Injunction and the Consent Order by permitting MAI to use and apply the licensed process and the materials in the United States.

### 4. Has RoadTechs Suffered Harm As A Result Of The Violation?

RoadTechs has offered evidence from a certified public accountant, Charles E. Walton, knowledgeable about the business of RoadTechs that the company has suffered damage in the amount of $174,704

as a result of the conduct which violated the injunction. That sum represents the conservatively stated lost profit which RoadTechs would have made on the sales of RoadFlex and HotCrete made by Lilley to MAI, if MAI had bought that material from RoadTechs, rather than Lilley. The lost profit is summarized in Plaintiff's Show Cause Hearing Exhibit 7. Walton testified at length about the factual predicates of, and the methodology for determining, the lost profit. Upon close examination of the testimony, the Court concludes that: (1) Walton's assumptions are conservative and that the lost profit on the materials, the use and application of which were permitted by MJ Highway during the pendency of an injunction against it; and (2) RoadTechs has established that, as a result of the violation of the Consent Order, it has sustained damage in the amount of $174,704 in lost profit.

Additionally, RoadTechs has demonstrated the total amount of fees and costs, including expert's fees, which it reasonably and necessarily incurred (in addition to those previously awarded) which are attributable to the Motion to Show Cause. Those fees and expenses are documented in Plaintiff's Show Cause Hearing Exhibits 9 and 10 and amount to a total of $11,375. The claimed fees and expenses are both adequately documented and conservatively stated.

### 5. Conclusion

On this record, the Court concludes that MJ Highway willfully and deliberately and in bad faith violated the terms of the Consent Order which continued in effect the prohibitions of the July 9 Temporary Injunction; that the orders violated were in RoadTechs' favor and that RoadTechs was damaged as a result thereof in the amount of $186,079.00.

Therefore, MJ Highway shall be fined $186,079.00 for civil contempt. The fine

11. See Section I, *supra*, pp. 682–685.

shall be paid to RoadTechs. Judgment in that amount shall be entered against MJ Highway for having violated both the terms of the Consent Order entered herein on September 3 and the Temporary Injunction which the Consent Order continued in effect.[12]

## III. REMOVAL OF INJUNCTION ON ROADTECHS

■ RoadTechs also has asked that the Consent Order be modified by eliminating the first sentence of paragraph 3 of the Consent Order which forbids RoadTechs from seeking, pending completion of arbitration, further contracts "to sell the materials identified in the License Agreement." The Court has authority, under Fed.R.Civ. Pro. 60(b), to modify its orders. Specifically, Rule 60(b)(5) provides in pertinent part, that on "such terms as are just" a court may "relieve a party" from a judgment or order "where it is no longer equitable" that the judgment or order have "prospective application." And, in *Alexander v. Britt*, 89 F.3d 194, 199 (4th Cir. 1996), the Fourth Circuit found that a consent order is " 'enforceable as a judicial decree' and is therefore subject to Rule 60(b) like other judgments and decrees.' " (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)).

The standard to be applied in assessing motions to modify an injunction to adapt to changed conditions, whether the decree was entered into after litigation or by consent of the parties, was first articulated in archaic language by the Supreme Court in *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). The Court of Appeals for the Eighth Circuit translated the words into a more understandable, modern version:

> Placed in other words, this means for us that modification is only cautiously to be granted; that some change is not

enough; that the dangers which the decree was meant to foreclose must almost have disappeared; that hardship and oppression, extreme and unexpected, are significant; and that the movants' task is to provide close to an unanswerable case.

*Humble Oil & Refining Co. v. American Oil Co.*, 405 F.2d 803, 813 (8th Cir.1969).

The terms of the Consent Order and the undisputed record establish that RoadTechs agreed to the first sentence of paragraph 3 of the Consent Order which, in effect, put it out of business except for sales to MAI, in exchange for the agreements made by MJ Highway in paragraph 2:(i) to maintain the License in effect, and (ii) not to allow others to use or apply the licensed process and materials in the United States pending completion of arbitration or further Order of this Court. The record also establishes that RoadTechs has abided by the terms of paragraph 3 of the Consent Order while MJ Highway entered the Consent Order knowing it was in violation of paragraph 2 and has continued in its violative conduct after the Consent Order was issued. Also, the record demonstrates that MJ Highway has been dilatory, to say the least, in bringing the dispute to arbitration.

Thus, the record here shows that RoadTechs is being severely prejudiced by the continued effect of paragraph 3 of the Consent Order. On the undisputed record, continued enforcement of paragraph 3 would be manifestly inequitable and, indeed, would permit MJ Highway to prosper from the perfidy in which it engaged to secure RoadTechs' agreement to paragraph 3.

In sum, the Consent Order was granted to continue the status quo between RoadTechs and MJ Highway to remain in effect as RoadTechs understood matters to be at the time the Consent Order was entered.

---

**12.** Pursuant to 28 U.S.C. § 1450, it is within the jurisdiction and power of this Court to enforce those orders and injunctions entered by the state court before the removal of the action to this Court.

However, the record is that, at the time that MJ Highway consented to the injunction against it and allowed RoadTechs to agree refrain from selling the licensed materials, MJ Highway knew the status quo already had been altered in MJ Highway's favor. And, throughout the continuation of the Consent Order, MJ Highway knew that MAI was bringing licensed material from Lilley.

RoadTechs has shown that a continuation of the obligations imposed on it by paragraph 3 would effectively foreclose it from an evolving market during a limited window of market expansion. And, a part of that expansion is represented by the efforts of Lilley, apparently with the knowledge and perhaps the cooperation of MJ Highway, to penetrate the market in the United States. This record truly presents an inequity from which RoadTechs requires relief.

Where, as here, a party has been foreclosed from developing its licensed territory by agreement to maintain the status quo pending arbitration and the opposing party knew at the time it secure that agreement that it was violating its part of the bargain, equity calls for relief. That is especially true where, as here, MJ Highway is dragging its heels, to put it charitably, in advancing arbitration.

In perspective of these unforeseen, substantial changes in conditions which have caused RoadTechs to unduly suffer hardship, as clearly shown by RoadTechs, the Court is satisfied that it is cautiously and correctly modifying the order it entered upon consent of the parties. Accordingly, RoadTechs' Motion to Modify the Court's September 3, 1999 Consent Order is granted as to the request to remove the injunction, and the first sentence of paragraph 3 of the Consent Order which provides for such injunction is stricken and shall be of no further force and effect.

## IV. WITHDRAWAL OF THE REFERENCE TO ARBITRATION

RoadTechs also asks the Court to withdraw the reference to arbitration made in the Consent Order. The provision of the Consent Order referring the matter to arbitration states:

1) All activity in this action between RoadTechs and MJ Highway is stayed until further order of this Court or until the conclusion of the arbitration between MJ Highway and RoadTechs to take place as soon as practicable in London, England. RoadTechs and MJ Highway shall act with due diligence to submit the dispute between them to arbitration.

Before signing the Consent Order, the Court added the provision: "6) Counsel shall report the status of the arbitration on October 4, 1999 and every thirty (30) days thereafter until concluded." RoadTechs argues, and has provided evidence, that, notwithstanding its numerous attempts at communicating with MJ Highway to select an arbitrator, MJ Highway has continuously stalled the process by refusing to promptly respond to telephone calls and written communications.

■ It is within the Court's power to withdraw the reference to arbitration and to vacate a stay pending arbitration, if it is shown that the party who originally sought the stay has hindered the progress of arbitration. *See Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653 (9th Cir.1991); *Miller v. Aaacon Auto Transport, Inc.*, 545 F.2d 1019, 1020 (5th Cir.1977); *Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d Cir.1964); *Ames v. Standard Oil Company*, 108 F.R.D. 299 (D.D.C.1985). However, even though the Court is aware that MJ Highway has not been proceeding with "due diligence" as required by the Consent Order, recent communications between the parties suggests that the arbitration process may have begun. Specifically, it appears that, on January 4, 2000, an oral agreement was reached by English counsel for both parties to allow the London Court of International Arbitration ("LCIA") to

act as the appointing authority for the selection of an arbitrator. (Plaintiff's Motion to Modify Hearing Exhibit 1). In order for the LCIA to begin the process of appointing an arbitrator, the parties are obligated each to submit a packet of background materials regarding the dispute as well as a fee which is payable in advance. If by February 25, 2000, the matter is not actually pending before an arbitrator, who has active control over the case and who has scheduled a hearing, the Court will entertain a renewed motion to withdraw the reference to arbitration. Therefore, RoadTechs's Motion to Modify the Court's September 3, 1999 Consent Order is denied, without prejudice, inasmuch as it requests a withdrawal of the reference to arbitration.

## CONCLUSION

For the foregoing reasons, RoadTechs's Motion to Show Cause is granted; RoadTechs's Renewed Motion to Compel Defendant MJ Highway Technology, Ltd. to Respond to Discovery and for Sanctions, Including Default Judgment is granted; MJ Highway is ordered to pay 186,079.00 to RoadTechs as fine for such violation; RoadTechs's Motion to Modify the Court's September 3, 1999 Consent Order is granted as to the request to remove the injunction prohibiting RoadTechs from seeking additional contracts, and denied, without prejudice, as to the request to withdraw the reference to arbitration.

It is so ORDERED.